UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

vs.   CASE NO. 3:10-cr-100-J-34TEM

LUCAS MICHAEL CHANSLER

## ORDER COMMITTING THE DEFENDANT
## TO THE CUSTODY OF THE ATTORNEY GENERAL FOR FURTHER TREATMENT

This case came before the Court for a Status Competency Hearing on April 4, 2011 (Doc. #44, Minutes).[1] All parties and the defendant, Lucas Michael Chansler, were present at the hearing. The Court, and the parties, have received a report from the Federal Medical Center, Butner, North Carolina, dated March 2, 2011, requesting that the defendant be returned to the facility pursuant to Title 18, United States Code, Section 4241(d).[2]

It is the opinion of the Drs. Robert E. Cochrane, Psy.D. and Bryon Herbel, that the defendant is mentally incompetent at this time; however, these doctors believe that with additional hospitalization and treatment Mr. Chansler may be restored to competency to stand trial in this case. At the hearing both counsel agreed with Drs. Cochrane and Herbel's report, which is attached to this Order. Both counsel stated that

---

[1] The non-transcribed recording of the hearing is hereby incorporated by reference. The parties may contact the Courtroom Deputy of the undersigned if a transcript of the hearing is desired.

[2] By Order dated September 2, 2010, the Court found Mr. Chansler mentally incompetent to proceed and committed him to the Federal Medical Center, Butner, North Carolina, pursuant to 18 U.S.C. § 4241 (Doc. #36, Order). The facts and conclusions set forth in the September 2, 2010 Order (Doc. #36) are hereby incorporated by reference.

they had no further evidence to present regarding the defendant's competency, and that they would, therefore, rely on the report, *supra*.

Based upon the March 2, 2011 report, and for the reasons stated on the record at the hearing, the Court, again, finds by a preponderance of the evidence that Mr. Chansler is incompetent to proceed. Thus, pursuant to Title 18, United States Code, Section 4241(d), it is hereby, **ORDERED**:

1. The defendant, Lucas Michael Chansler, is committed to the custody of the Attorney General, or his duly authorized representative, who shall hospitalize defendant for treatment in a suitable facility for "a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future" competence will be restored, and any additional reasonable period of time permitted under Section 4241(d)(2).

2. The custodian of defendant shall file status reports with the Court. Copies of the reports should be furnished to Mr. Alan E. Rosner, Esquire (counsel for defendant), at 1837 Hendricks Avenue, Jacksonville, Florida 32207, and Mr. D. Rodney Brown, Esquire, Assistant United States Attorney, at 300 N. Hogan Street, Suite 700, Jacksonville, Florida 32202. The first report should be submitted no later than sixty (60) days from the date of defendant's arrival at the designated facility, if the detention continues that long, and subsequent reports should be tendered every sixty (60) days thereafter.

3. The United States Marshal is directed to transport Defendant *post haste* to the institution designated for the purpose of this commitment by the most expeditious and direct means available.

4.	The defendant, Lucas Michael Chansler, **shall remain in the custody of the designated facility**, and shall **not** be transported back to the Middle District of Florida absent a prior Court Order. Should it be necessary for the defendant to appear for a subsequent hearing regarding his mental competency, the Court will arrange a **video-conference hearing**.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of April, 2011.

*Thomas E. Morris*
THOMAS E. MORRIS
United States Magistrate Judge

Copies to:
Asst. U. S. Attorney (Brown)
Alan E. Rosner, Esquire
U. S. Probation
U. S. Pretrial Service
U. S. Marshals Service (4 certified copies)



# U. S. Department of Justice

Federal Bureau of Prisons

*Federal Correctional Complex*

---

*Federal Medical Center*
*P. O. Box 1600*
*Butner, NC 27509*
*(919) 575-3900*

March 22, 2011

The Honorable Thomas E. Morris
United States District Court
Middle District of Florida
300 North Hogan Street, Suite 5-311
Jacksonville, Florida 32202

RE: CHANSLER, Lucas Michael
    Register Number: 53228-018
    Docket Number:   3:10-cr-100-J-34TEM

Dear Judge Morris:

In accordance with your Court Order of September 2, 2010, a psychiatric evaluation of Mr. Chansler has been completed.

It is our opinion that Mr. Chansler is suffering from a mental disease or defect rendering him mentally incompetent to the extent he is unable to understand the nature and consequences of the proceedings filed against him or assist properly in his own defense. However, we believe that with an additional period of hospitalization and treatment, Mr. Chansler's competency to stand trial may be restored. Therefore, we recommend he be committed to the custody of the Attorney General pursuant to Title 18, United States Code, Section 4241(d). I have enclosed the report prepared by our staff reflecting these opinions.

If you require additional information or clarification of issues presented in the attached report, our clinicians are available by phone or video conferencing. Unfortunately, our budget does not include funding for travel, therefore, if a clinician's presence in court is required, we will have to request reimbursement of expenses.

The United States Marshals Service will be notified for return of Mr. Chansler to your District Court for further legal proceedings if necessary.

If we can be of further assistance to the Court in this or other matters, please do not hesitate to contact Dr. Jean Zula, Chief Psychiatrist, at extension 5475.

Respectfully,

Sara M. Revell, Complex Warden

cc: D. Rodney Brown, Assistant United States Attorney
    Alan E. Rosner, Defense Attorney

FORENSIC EVALUATION
Mental Health Department
Federal Medical Center
Butner, North Carolina

| | |
|---|---|
| **NAME:** | CHANSLER, Lucas |
| **DOCKET NUMBER:** | 3:10-cr-100-J-34TEM |
| **REGISTER NUMBER:** | 53228-018 |
| **DATE OF BIRTH:** | |
| **DATE OF REPORT:** | 03/02/11 |
| **DATE SIGNED:** | 03/28/11 |

**IDENTIFYING INFORMATION:** Mr. Lucas Chansler is a 27-year old, Caucasian male admitted to FMC Butner on 11/05/10 pursuant to a court order by the Honorable Thomas Morris, United States Magistrate Judge for the Middle District of Florida, Jacksonville Division. On 09/02/10 Judge Morris found Mr. Chansler to be incompetent to stand trial and ordered he be evaluated and treated pursuant to Section 4241(d) of Title 18, USC.

Mr. Chansler is charged with extortion and production, receipt and possession of pornography. There are no co-defendants in the case. He is being represented by Alan E. Rosner, and the Assistant United States Attorney assigned to the case is D. Rodney Brown.

At the outset of his admission, Mr. Chansler was informed he was referred to FMC Butner for competency evaluation and treatment pursuant to Section 4241(d). He was told the interviews and any other information he provided or was obtained about him would be reported back to the Court, as well as defense and prosecuting attorneys, in a written report and/or through oral testimony. He indicated understanding this information and agreed to proceed.

**DATES OF CONTACT/PROCEDURES ADMINISTERED:** During the evaluation period, Mr. Chansler was interviewed by Robert E. Cochrane, Psy.D., Staff Psychologist. Psychiatric consultation was provided by Bryon Herbel, M.D., Staff Psychiatrist. Other members of the Forensic Team, Correctional, and Mental Health staff also had the opportunity to observe Mr. Chansler's behavior throughout the course of the evaluation. Their comments were considered prior to preparation of this report. The following procedures were administered during this evaluation:

Clinical Interviews (ongoing)
Behavioral Observations (ongoing)
Physical Examination (11/04/10)

In addition to the court order, collateral information available for review included: Memorandum from the Assistant United States Attorney to the U.S. Marshal Service, dated 09/02/10; Indictment, dated 04/15/10; discovery material, including search warrant and investigative reports; records from Allied Psychological Services, dated 01/19/10 to 09/01/10; telephone interview with Mr. Chansler's father, James Chansler, on 12/07/10; and telephone contact with Mr. Rosner on 12/16/10.

**BACKGROUND INFORMATION:** The following is based on Mr. Chansler's self-report and the above referenced sources where indicated. He appeared to be a fairly reliable historian, in that he was cooperative and able to easily recall historical events.

Mr. Chansler was born and raised in Jacksonville, Florida. He was raised by his biological parents who continue to live in Jacksonville. He has two older sisters who reside in Kentucky. Me. Chansler described having a fairly unremarkable childhood. He denied any history of trauma, neglect, or abuse. There is no family history of substance abuse; however, his mother has suffered from depression and one of his sisters was diagnosed with bipolar disorder.

Mr. Chansler graduated high school at age 18. He described attending public schools through the eighth grade, but was homeschooled between ninth and 12th grade. He denied having any delinquent behavior or misconduct and indicated receiving good grades throughout his academic career. However, Mr. Chansler reported never feeling like he "fit in" with other children and was chronically anxious in the school setting. He briefly had one or two friends but became increasingly isolated by the time he graduated from high school.

Mr. Chansler has a limited employment history. His only job was working at Walgreens for two and a half years beginning at age 16. Following that, he entered community college and then the University of Florida. Mr. Chansler indicated having a "nervous breakdown" after his first semester of college. He indicated the anxiety experienced while around others was often unbearable and he had to "push" himself to go to classes. He found that he had difficulty concentrating and the coursework became increasingly difficult.

Mr. Chansler has never been married and has no children. In fact, he disclosed that he has never dated or been involved in a romantic relationship. He has lived with his parents his entire life. He described a nonexistent social life, but indicated spending most of his time watching television, reading books, or playing video games.

Besides periods of hypertension, Mr. Chansler reported being in generally good physical health. He denied any history of serious head trauma, chronic headaches, dizziness, seizures, or other signs of neurological impairment. He has not been regularly taking any prescribed medications.

Mr. Chansler denied any history of alcohol or substance abuse. He does not drink socially and has not experimented with illicit drugs. He has never been involved in substance abuse treatment.

Mr. Chansler first received mental health treatment around 2002 at the urging of his mother. During his first semester of college he recalled becoming very depressed and anxious. He reportedly could not get out of bed and had difficulties concentrating and completing his work. He indicated being involved in therapy for approximately one month, after which he "wussed out" and discontinued treatment. Mr. Chansler indicated becoming too anxious to attend treatment sessions. He did not receive mental health treatment again until around January 2010. He was involved in weekly therapy as well as receiving psychotropic medication, including Xanax, Zoloft, Effexor, and Cymbalta. He reportedly received no benefit from various medication trials. While he found therapy to be somewhat effective in making him feel better during the sessions, he indicated this did not generalize to his life as he continued to experience significant depression and anxiety. Mr. Chansler acknowledged having fleeting thoughts of suicide in 2002 and 2010, as recently as three months ago. However, he indicated having no history of suicide attempts or ever making plans to kill himself.

According to records from Allied Psychological Services from 2010, Mr. Chansler was seen on approximately six occasions for treatment of depression and anxiety. Dr. Bloomfield apparently indicated he was not competent to proceed in his criminal case.

According to his father, Mr. Chansler has lived with his parents his entire life. He suffered no abuse or traumatic events and the family was supportive and close. At a young age he was involved in sports and was a good student in school. He even

became a black belt in Taekwondo. He had friends until around age 9 or 10, but then he became more reclusive. In the eighth grade he convinced his parents to home school him, which continued throughout his high school years. He then began attending a local college, where his parents assumed he was making friends. While high school was relatively easy for him, he apparently struggled somewhat with his college courses. His interest and enjoyment in activities decreased and during his teenage years they became concerned about him being depressed. He never reported having suicidal thoughts or attempted to harm himself. He rarely left the home. His mother took him to see a psychiatrist approximately four years ago, although Mr. Chansler was reluctant to participate and never took the prescribed medication. He resisted their efforts to get him help. However, following his recent arrest, Mr. Chansler was seen by mental health professions and began receiving psychotropic medication. His mother indicated he appeared calmer and worried less during treatment.

Mr. Chansler reported having no prior criminal history. His first contact with law enforcement was in January 2010 when a search warrant was issued. He was not taken into custody until April and two weeks later was released on bond. At his September 2nd court hearing, he was returned to custody after the Court declared him incompetent to stand trial. Mr. Chansler expressed irritation over this decision , as he explained that Dr. Bloomfield informed him he could likely be treated on an outpatient basis, but during the hearing he testified that Mr. Chansler needed inpatient care. Mr. Chansler also stated he was upset for having been placed on suicide watch at the local jail, even though he repeatedly informed Dr. Bloomfield and others he was not suicidal. He recalled Dr. Bloomfield informing him the test results suggested he was at high risk for suicide, but he did not consider Mr. Chansler to be suicidal at that time.

According to the investigative reports, Mr. Chansler allegedly engaged in the extortion, production, receipt, and possession of child pornography. He allegedly used social networking sites to meet girls between the ages of 13 and 18. He would engage in video chat with these girls, which he recorded. He obtained several photographs of underage girls exposing themselves. He then extorted additional sexually explicit images from them by informing them he would expose the photos to their family and friends if they did not comply. He allegedly engaged in this activity on numerous occasions. He never met any of these individuals and reportedly communicated with them via his personal, home computer.

**COURSE OF HOSPITALIZATION:**  On admission the Mental Health Department of FMC Butner, Mr. Chansler underwent the routine physical exam and laboratory studies.  The physical exam conducted on 11/04/10 described him as alert, oriented, and cooperative.  His height was 65.5 inches and his weight was 181 pounds.  His pulse was 108 and his blood pressure was 143/82.  The only significant finding on examination was borderline hypertension.  The self-reported past medical history was significant for anxiety and depression with outpatient psychiatric treatment and adolescent onset hypertension.  Mr. Chansler reported no known allergies.

Admission laboratory studies included urinalysis, complete blood count, thyroid profile with TSH, liver profile, electrolytes, serum glucose, cholesterol, BUN and creatinine, and screens for HIV and syphilis.  The only significant finding was ketones in the urine and hyperlipidemia with serum cholesterol at 234 (reference range 0-200) and serum triglycerides at 164 (reference range 1-149).  A PPD skin test for tuberculosis was applied on 11/03/10 and read as negative at 0 mm induration two days later.

Mr. Chansler was medically stable during the evaluation.  He was educated about the need for lifestyle modifications as well as possible treatment with lipid lowering medication, and refused to consider medication treatment of his hyperlipidemia.  Most of his blood pressure readings were in the normal to borderline hypertensive range.

During initial psychiatric assessment on 11/04/10, Mr. Chansler reported a previous two-month trial each with antidepressants venlafaxine (Effexor) and duloxetine (Cymbalta), as well as a trial of sertraline (Zoloft) 100 mg daily augmented with the benzodiazepine alprazolam (Xanax) 0.5 mg four times daily.  He stated the antidepressants were not effective for depressive symptoms and caused the side effect of excessive sweating.  The sertraline was discontinued and a trial of the antidepressant mirtazapine (Remeron) 15 mg at bedtime was initiated and increased to 30 mg at bedtime three days later.  After three weeks, Mr. Chansler reported no benefit from this medication with the side effect of restless legs at night.

On 11/30/10 the mirtazapine was lowered to 15 mg at bedtime for three days and then discontinued.  A trial of the antidepressant XL bupropion XL 24 hour (Wellbutrin XL 24 hour) 150 mg daily was initiated on 12/02/10.  The dose of bupropion was increased to

300 mg daily on 12/12/10 due to lack of efficacy and a published case report in which this medication reduzed symptoms of restless legs in one patient. The bupropion was stopped two days later due to Mr. Chansler's complaints of persistent activation and insomnia. He was prescribed one does of these benzodiazepine lorazepam (Ativan) 2 mg at bedtime.

On 12/21/10, treatment with bupropion XL 24 hour 150 mg was resumed due to Mr. Chansler's past ability to tolerate this lower dose. The bupropion was discontinued on 01/04/11 due to Mr. Chansler's reports of worsening of his anxiety and alopecia. A non-formulary request for the benzodiazepine clonazepam (Klonopin) was submitted, with the plan for a more focused treatment of Mr. Chansler's anxiety symptoms.

On 01/06/11, a trial of clonazepam 1 mg twice daily was initiated. After Mr. Chansler reported less insomnia but no significant improvement in anxiety symptoms, on 01/21/11 the dose of clonazepam was increased to 2 mg twice daily. Mr. Chansler reported marked daytime sedation on this dose with no significant improvement in his anxiety symptoms. On 01/26/11 the dose of clonazepam was lowered to 1 mg twice daily and a trial of a beta blocker was recommended. Mr. Chansler refused the recommendations for a trial of propranolol (Inderal) but requested a trial of atenolol (Tenormin), since he had once taken one half of a tablet of his mother's atenolol 25 mg tablets during a particularly troublesome panic attack, with good results within 30 minutes. A trial of atenolol 12.5 mg twice daily was initiated on 01/26/11. This medication was well tolerated with some decrease in his blood pressure readings, but did not produce a marked benefit in his capacity to tolerate his anxiety symptoms in response to being promoted to an open population housing unit.

On 02/09/11, a trial of the antidepressant citalopram (Celexa) 20 mg was initiated after Mr. Chansler appeared tearful, depressed, and unable to cope with the stress of being in a regular open population unit. Two weeks later, he reported no significant benefit from this medication with the side effect of mild to moderate daytime sedation.

Mr. Chansler was first interviewed by the primary evaluator on the restricted movement unit, 1-E, where he was housed due to complaints of anxiety around others. He presented as calm, fairly alert, and cooperative. He appeared mildly disheveled but was not malodorous. His eye contact was poor, as he squinted or kept his eyes closed nearly the entire session. He

was oriented to person, place, time, and circumstance. His speech was soft, but clear and understandable. He displayed organized thought processes, with no evidence of loose associations or derailment. He reported feeling "overwhelmed" and his affect was blunt and consistent with the depressive content of his speech.

Mr. Chansler was tearful throughout much of the interview, crying more noticeably when discussing painful topics (e.g., not being with his family). His concentration and attention were grossly intact throughout the interview; he did not need any questions repeated and he performed relatively well on a serial subtraction task of attention. His recall for recent and remote information also appeared good. Mr. Chansler recalled historical events well and was able to remember three of three words given to him following a five minute delay. His fairly sophisticated grammar and vocabulary, and his ability to interpret proverbs and a word similarities task, also suggested he has average to above average intellect. Mr. Chansler did not exhibit any tics, abnormal movements, stereotypies, or bizarre posturing. His energy level and psychomotor activity was observed to be slow.

Mr. Chansler reported experiencing several symptoms of depression and anxiety, including depressed and anxious mood, sleep disturbance, poor concentration, poor energy, and feelings of hopelessness. He denied poor appetite or having ruminative thinking. He also emphatically denied experiencing suicidal ideation or having an intent to die. He indicated while he felt his life was ruined and he saw little hope for his future, he had several reasons to live. Regarding his anxiety, Mr. Chansler stated he becomes very anxious around people with whom he is not familiar, especially when in large crowds. He expressed a preference to remain on the restricted unit, where he was housed alone.

Mr. Chansler reported no history of psychotic symptoms, including hallucinations, paranoia, thought insertion, thought broadcasting or withdrawal, or ideas of reference. He denied any history of posttraumatic stress or mania (e.g., elevated mood, racing thoughts, and decreased need for sleep). He also denied symptoms of panic attacks or obsessive/compulsive behavior.

Mr. Chansler was open to discussion about treatment while at FMC Butner. He appeared ambivalent on this issue. That is, while he expressed a desire to feel better, he was not very hopeful

his situation or condition would improve. Despite that, he wanted to continue treatment with psychotropic medication and was willing to speak with a therapist on a routine basis during his stay. And while Mr. Chansler desired to keep to himself on the restricted unit, he agreed that a part of ongoing treatment may involve slowly transitioning to a more open unit where he would interact with others.

Toward the end of the interview, Mr. Chansler was assisted in contacting his father whom he spoke to briefly. Mr. Chansler also signed a release of information to obtain mental health records from his recent therapist, Dr. Alan Harris.

Given the fact Mr. Chanser was recently placed on Suicide Watch at a local jail facility, this issue was carefully explored. While he appeared quite depressed, was facing criminal charges, and his prior test results (MCMI and possibly MMPI-2 according to the court order) may have indicated he had personality factors and symptoms placing him at higher risk for suicide, there are several protective factors that suggested he was at relatively low risk for suicide at the time. These factors included: persistent and adamant denial he was experiencing suicidal ideation or has intent to die; a loving, supportive family; hope he will someday return to his family; no history of suicide attempts or self-harm; no chronic or acute medical ailments; no substance misuse history; and cooperation with mental health treatment.

Mr. Chansler was reluctant to leave the restrictive movement unit, where he had no contact with other inmates. He denied fear for his safety, but indicated too much discomfort being around others. In addition to treatment with psychotropic medication, Mr. Chansler was provided educational information and material regarding proper sleeping habits and exercise, to address some of his depressive symptoms. He agreed to implement these, but only did so on an intermittent basis. Individual psychotherapy was also initiated on a roughly weekly basis, which was conducted by a therapist unaffiliated with his competency evaluation. The following is a summary provided by the therapist, Ms. Jaclyn Grad:

*Mr. Chansler was seen for approximately 11 individual sessions conducted on a weekly to bi-weekly basis. Sessions lasted from 30 to 60 minutes. During sessions, Mr. Chansler was usually oriented to person, place, and situation, cooperative and appropriate. He tended to avoid eye contact and spoke in a quiet voice. He rarely initiated conversation, instead speaking only when asked a direct question and to answer with short, often vague responses. Mr. Chansler's grooming and hygiene were typically good, however there was a slight decline in this area for a brief time, which was associated with a*

*decline in mood. Mr. Chansler frequently became tearful and usually visibly shook during the majority of each session. Mr. Chansler admitted that he was hesitant to fully engage in therapy and often did not exert his full effort. At the outset of therapy, Mr. Chansler reported a history of anxiety and depression beginning in childhood. He described several previous experiences with behavioral therapy but considered these experiences to be only slightly helpful. When asked about specifics of symptom expression and previous treatment attempts, Mr. Chansler was vague in his response. Initially, cognitive behavioral strategies targeting anxiety were utilized with Mr. Chansler. He was taken through a number of cognitively focused exercises including development of an anxiety hierarchy, identification of triggers, imaginal exposure and cognitive restructuring. He was also asked to participate in various behavioral exposures. Although Mr. Chansler completed all tasks asked of him, he exerted only minimum required effort and did not view the treatment procedures as relevant or helpful. After limited success with cognitive behavioral strategies, a number of other techniques were employed in sessions including motivational interviewing, progressive muscle relaxation, mindfulness exercises, and dialectical behavior therapy strategies aimed at distress tolerance and emotion regulation. However, Mr. Chansler made minimal progress in therapy.*

Given little treatment progress over the first two months of his admission, Mr. Chansler was informed he would be placed on the transition unit, since exposure to his fears was considered an important part of the treatment process. He was ambivalent about this plan, but did not object. He functioned relatively well on the transition unit, although he tended to keep to himself and interacted minimally with others. He had no conflicts or problems with his peers and was always respectful with staff. Shortly after his arrival to the unit, Mr. Chansler was given a work assignment in the Vocational Workshop. To this, he also was not very enthusiastic; however, it was becoming clear that Mr. Chansler would cooperate with whatever was recommended by the treatment providers, but he would not put Forth a great deal of effort. This was likely due, in part, to his depressive condition, but also appeared quite volitional. In fact, Mr. Chansler often stated he wanted to "cooperate," but acknowledged not putting forth complete effort.

On 02/03/11, Mr. Chansler was subsequently tried on an open mental health unit, to test his ability to tolerate the stressors of being around a greater number of individuals. Unfortunately, due to his social fears, he did not attend dinging hall for meals (previously he ate meals on the transition units). With less supervision and oversight staff on the open unit, Mr. Chansler was able to go largely unnoticed. Over the course of five days he lost five pounds as a result of limited food intake. He later stated he only ate items purchased from the vending machine by his parents when they visited on the weekend. As a result, he ws returned to the transition unit, where he continues to reside. He resumed

eating meals and is stable on that unit. He spends a good deal of his time reading books.

During clinical interviews toward the later part of his admission, Mr. Chansler remained quite depressed in his presentation. His tearfulness was intermittent and he was mildly tremulous in his extremities during sessions. He reported no hope for his future, expecting he will spend a number of years in prison. He engaged in limited spontaneous speech, however, he would answer any and all questions posed by the evaluator, even questions of a highly personal nature (e.g., his sexual interests). He expressed no sexual arousal or desire toward prepubescent children. He also denied problems or symptoms associated with various paraphilias (e.g., exhibitionism, voyeurism). While he appeared nervous during the interviews, Mr. Chansler had no difficulty comprehending questions or responding appropriately.

**IMPRESSIONS:** According to the *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR)*, by the American Psychiatric Association, Mr. Chansler's diagnoses are considered to be the following:

Axis I:     Social Phobia 300.23
            Major Depressive Disorder, Recurrent 296.3
            Rule Out Pedophilia 302.2
Axis II:    Rule Out Avoidant Personality Disorder 301.82
Axis III:   Hyperlipidemia
            Borderline Hypertension
Axis IV:    Pretrial Confinement
Axis V:     GAF = 50

Based on all of the available information, Mr. Chansler suffers from depression and anxiety consistent with Social Phobia and Major Depressive Disorder. There was insufficient data to determine whether he also meets criteria for Pedophilia (sexual arousal and behavior involving prepubescent children) and Avoidant Personality Disorder (a pervasive pattern of social inhibition beginning by early adulthood).

Social Phobia (or Social Anxiety) involves a marked and persistent fear of one or more social or performance situations whereby the individual fears he will act in a way that will be humiliating or embarrassing. The avoidance and/or distress impairs the person's normal routine or functioning. Accounts By Mr. Chansler and his father, as well as mental health providers and testing results, all suggest he meets criteria for

this condition. His anxiety and tense presentation were consistent, intense, and visible during his FMC admission. Typically, various forms of psychotherapy, such as Cognitive Behavioral Therapy, as well as psychotropic medications, are effective in treating this condition. With continued treatment and greater personal effort by Mr. Chansler, his prognosis is fair to good.

It is not uncommon for those suffering from anxiety to also experience significant depression. In Mr. Chansler's case, his depressive symptoms are such that he also meets criteria of a Major Depressive Disorder. Symptoms he has experienced include decreased interest in enjoyable activities, depressed mood, sleep disturbance, psychomotor retardation, hopelessness, loss of energy, and intermittent weight loss. Again, his prognosis is fair to good with prolonged treatment and effort.

Symptoms of social anxiety overlap to some degree with maladaptive personality traits associated with an Avoidant personality (i.e., social inhibition, feelings of inadequacy). Accounts by he and his father suggest Mr. Chansler has been shy, reclusive, and inhibited since a fairly young age. Unfortunately, Mr. Chansler was reluctant to share his thoughts, feelings, and motivations for his avoidant behavior, making this determination somewhat difficult. Also, while Mr. Chansler denied sexual interest in prepubescent children, the criminal accusations suggest this may be an issue for him. With limited data, it could not determine whether he meets criteria for Pedophilia. Regardless, as noted below, his anxiety and depressive disorders are the primary problems associated with his incompetency.

In regard to his competency to stand trial, Mr. Chansler was questioned about his factual and rational understanding of the proceedings and his ability to assist counsel in his defense. When he was asked about the charges and criminal legal process, he articulated an exceptional understanding of these issues. For instance, he stated the accusations involved "that I got teenage girls to expose themselves and recorded video clips of it, and clips to extort more exposing." Mr. Chansler was able to appropriately describe several details of these allegations, which were consistent with reports from the investigative records. He also recalled being told by his attorney that if he is found guilty he could be sentenced to 15 years in prison. He clearly understood the meaning and importance of evidence and was able to explain what prosecutors would likely use to try to prove his guilt. Mr. Chansler was able to appropriately

describe the trial and plea bargaining process.  For example, regarding the former, he stated, "Prosecution puts forth their evidence and the defense puts forth theirs.  The jury makes a decision."

Mr. Chansler never verbalized any delusional or irrational under- standing of the charges, the proceedings, or legal counsel.  His thought processes were organized and linear and he clearly appreciated the serious nature of the allegations.

Mr. Chansler's ability to assist counsel was the more difficult area to determine.  While he could related adequately enough during discussions with the primary evaluator and other staff (i.e., answer questions coherently), recall important facts related to the case, and voice trust in Mr. Rosner and his representation, there were two issues of concern.  First, he appeared to take a very passive stance toward his defense, preferring his attorney to handle all matters.  Mr. Chansler often made comments like, "I'll just let him handle it" or "I'll do whatever he recommends."  When pressed on this issue, he continued to struggle to make independent choices, such as whether to go to trial or work out a plea agreement.

The second area of concern is Mr. Chansler's decision making ability, which appears heavily influenced by his anxiety and depressive symptoms.  When Mr. Chansler was asked several questions about how he would make various decisions, in each case his choice was that which would result in the least amount of public attention, regardless of the outcome.  For instance, he was initially asked what he would do if his attorney suggested they take the case to trial.  He indicated, "I don't think I could handle a trial," referring to his feelings of overwhelming anxiety in such situations.  However, when told that the alternative would include pleading guilty and likely speaking, at least to some degree, during the plea of allocution, Mr. Chansler changed his mind.  He stated that he would rather sit silently through a trial than have to speak at all during any proceedings.  When informed that losing at trial could potentially result in a considerably lengthier prison sentence, Mr. Chansler did not care.  While crying, he hopelessly stated, "What's it matter…I rather let whatever happens, happen."  Other decisions, such as testifying on his own behalf, also appeared impacted by his intense desire to avoid anxiety.

As noted earlier, Mr. Chansler made little progress in treatment during his admission.  However, he acknowledged what was

apparent to the evaluator, his therapist, and other members of the team; that is, despite his depression and anxiety he has the capacity to exert greater effort in treatment, which would likely result in improvement of his conditions to the point he would be capable of assisting in his defense.  It is expected that with greater effort over a longer period of time, Mr. Chansler would be restored to competency.  Therefore, while we continue to view Mr. Chansler as not competent to stand trial, there is a substantial probability his competency to stand trial can be restored in the foreseeable future with further treatment.  We recommend he be re-committed under section 4241(d) of Title 18 for another four month period of restoration of his competency.

Mr. Chansler is ready to be returned to court for further legal proceedings.  He will need medical oversight of his hyperlipidemia and borderline hypertension and psychiatric management of his regimen of psychotropic medication.

Mr. Chansler is currently prescribed atenolol 12.5 mg twice daily; citalopram 20 mg daily; and clonazepam 1 mg twice daily.

_____ 3/28/11
Robert E. Cochrane, Psy.D.
Director of Psychology Training
Board Certified Forensic Psychologist
American Board of Professional Psychology #5878

_____ for
Bryon Herbel, M.D.
Diplomate of the American Board of Psychiatry and Neurology
General Psychiatry #35168
Subspecialty of Child and Adolescent Psychiatry #3263
Subspecialty of Forensic Psychiatry #647

REC:bh/deh