UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                  CASE NO. 3:10-cr-100-J-34TEM

LUCAS MICHAEL CHANSLER,

        Defendant.

_____

## ORDER ON COMPETENCY

**THIS CAUSE** was set for a hearing before the undersigned to determine the competency of Defendant, Lucas Michael Chansler. The Court has considered the Competency Evaluation Reports of Drs. Robert E. Cochrane and Bryon Herbel, Dr. Stephen I. Bloomfield, and Dr. Katayoun Tabrizi; the testimony and evidence presented at the evidentiary hearing held on September 20, 2012; and arguments presented by counsel on October 2, 2012. For the reasons set forth below, the Court concludes Defendant is not competent to participate in pretrial proceedings and to stand trial at this time.

### I. Background

Defendant was arrested on April 16, 2010, on a fifteen count Indictment charging a variety of offenses involving child pornography (Doc. #1). He was subsequently released on a bond requiring home confinement (Doc. #21). At the bond hearing, a psychiatrist testified as to mental conditions for which he had been treating Defendant.

1

Subsequently, during discovery in the case, the United States filed a motion for a competency evaluation of Defendant (Doc. #27). The Court entered an Order (Doc. #30) that Defendant be evaluated by Dr. Stephen Bloomfield, a forensic psychologist. Dr. Bloomfield met with Defendant twice, on August 23, 2010 and again on August 25, 2010, and submitted a report dated August 31, 2010 (See Doc. #34, Government's Exhibit 1). The Court held a competency hearing on September 2, 2010, and Dr. Bloomfield testified by telephone (Doc. #34).

Dr. Bloomfield performed standard testing of Defendant, including administration of the Minnesota Multiphasic Personality Inventory-II-RF. He wrote, and testified, that he became concerned because of the positive findings in the test in terms of suicidal ideation. Although Defendant acknowledged suicidal thoughts, he denied any suicidal plan. The doctor had Defendant return two days later and administered another test, the Millon Clinical Multiaxial Inventory-III, in further assessing suicide risk. Dr. Bloomfield concluded Defendant's Axis II classifications fit a combination of a depressive personality and an avoidant personality, as well as a dependant personality with Axis I diagnoses of major depression, recurrent, severe, without psychotic features and an anxiety disorder.

Although the doctor found Defendant to be intelligent and had no limitations of understanding the criminal proceedings in which he is charged, he concluded Defendant was unable to assist in his defense because of his social phobia and anxiety and an avoidance and attendant disorder. As an example, Dr. Bloomfield said Defendant would not express his thoughts to his attorney, but would think later what he should have told the attorney. Dr. Bloomfield said Defendant will not participate in discussions with authority figures, although he does participate with his psychologist. Dr. Bloomfield expressed

2

concern that the condition would cause difficulty assisting counsel at trial, as well as in pretrial preparation. Further, Dr. Bloomfield expressed concern about the risk of suicide, but he did say Defendant's mental conditions could be stabilized with medication. He indicated Defendant expressed that he would like to change his mental situation and has been taking medication prescribed by his family doctor. However, Dr. Bloomfield said medical treatment to decide which medications would work could best be done in an inpatient treatment facility.

Based on Dr. Bloomfield's report and testimony, the Court found Defendant incompetent to participate in pretrial proceedings and to stand trial (Doc. #36). The Court ordered Defendant committed to the custody of the attorney general for treatment. Defendant was committed to the Federal Medical Center, Butner, North Carolina ("Butner"), pursuant to 18 U.S.C. § 4241.

Thereafter, the Court received a report from Butner, dated March 22, 2011 (*see* Doc. #46). Drs. Robert E. Cochrane, Psy.D.[1] and Byron Herbel, M.D.[2] diagnosed Defendant with social phobia and major depressive disorder. The doctors found Defendant had a factual and rational understanding of the proceedings against him; however, they were concerned about his ability to assist counsel in his defense. The doctors specifically noted two areas of concern. First, Defendant took a very passive stance toward his defense, preferring his attorney to handle all matters. Second, Defendant's decision-making ability appeared heavily influenced by his anxiety and depressive symptoms. For example, when asked what he would do if his attorney suggested they take the case to

---

[1] Dr. Cochrane is a staff psychologist at Butner.

[2] Dr. Herbel is a staff psychiatrist at Butner.

3

trial, he indicated he did not think he could handle a trial due to overwhelming anxiety. However, when told the alternative would include pleading guilty and would likely require speaking during the plea allocution, Defendant changed his mind and stated he would rather sit silently through a trial than have to speak at all during any proceedings. Other decisions, such as testifying on his own behalf, also appeared impacted by his intense desire to avoid anxiety. Accordingly, Drs. Cochrane and Herbel expressed the opinion that Defendant was mentally incompetent to proceed; however, the doctors believed Defendant's competency could possibly be restored with additional hospitalization and treatment. Following a status competency hearing on April 4, 2011 at which both counsel agreed with Drs. Cochrane and Herbel's report, the Court found Defendant incompetent to proceed and ordered Defendant committed to the custody of the attorney general for further treatment (Doc. #46).

The Court received a report from Butner, dated October 18, 2011. In the report, Drs. Cochrane and Herbel expressed the opinion that Defendant had been restored to competency and was competent to stand trial. Upon readmission, Defendant's clinical presentation remained essentially unchanged. He expressed a long-term goal of reducing his symptoms, but his desire to avoid the temporary anxiety experienced in psychotherapy and exposure exercises caused him to terminate psychotherapy prematurely and he could not be motivated to continue this treatment. Psychopharmacological interventions produced limited benefit. Defendant showed some improvement in his anxiety but his depressive symptoms continued. Drs. Cochrane and Herbel found Defendant had a solid factual and rational understanding of the charges against him and legal proceedings.

The doctors noted there were two issues which posed a potential problem with Defendant properly assisting counsel in his defense. First, Defendant approaches his case in a passive manner in that he prefers others, such as his parents and his attorney, to make decisions for him. When asked about decisions he might have to make in court, such as pleading guilty or going to trial, Defendant would initially and almost reflexively, reply that he would do whatever his attorney or family suggested. However, the doctors found that when pressed to make an independent choice on issues pertaining to fundamental legal rights, Defendant would eventually express a preference and provide his reasoning for it. He eventually acknowledged that while listening to the advice of others was important, he would ultimately have to make the final decision. The doctors found Defendant's behavior during his admission indicated that, while it was difficult for him, he was capable of asserting himself when necessary. Second, the doctors noted the other potential barrier to competency had to do with the influence of Defendant's psychiatric symptoms on his decision-making. The doctors noted Defendant's pessimistic view of his future and his desire to avoid discomfort shape his decisions, at least in part. However, Defendant recognized that, regardless of the decisions he must make, he will experience significant anxiety during the proceedings and recognized that other factors, such as the severity of potential sentence, would enter into his decision as well. Additionally, Defendant demonstrated greater flexibility in his thinking and was more willing to consider and discuss legal options than during his first admission. Thus, Drs. Cochrane and Herbel concluded that despite Defendant's mental illness, ongoing symptoms of anxiety and depression, and mild competency deficits, Defendant's impairments did not significantly interfere with his competency to proceed.

5

Following receipt of the report from Butner, the Court held a status conference on November 4, 2011 (Doc. #57). Defendant's counsel requested the Court allow Dr. Bloomfield to evaluate Defendant again. The Court granted the request.

Dr. Bloomfield re-examined Defendant on March 2, 2012 for approximately three to three and a half hours. Dr. Bloomfield submitted a report dated March 13, 2012 in which he found Defendant "incompetent [or] at least semi-incompetent." Dr. Bloomfield administered two instruments – Inventory of Legal Knowledge ("ILK") and Miller Forensic Assessment of Symptoms Test ("M-Fast") – that indicated Defendant was not malingering. Dr. Bloomfield found Defendant suffered from a significant mental illness with ongoing symptoms of anxiety, depression, social avoidance, and dependency which impair his ability to be considered fully competent. Dr. Bloomfield did not believe Defendant could assist in a rational basis with his defense and would have a great deal of difficulty making necessary decisions involving issues such as whether or not he should enter into a plea agreement or testify at trial. Dr. Bloomfield stated it took tremendous effort for Defendant to participate and this would significantly interfere with his ability to assist in his defense. Dr. Bloomfield recommended Defendant remain at Butner to determine if other medications, other psychiatric interventions, or some form of "exposure" therapy might assist him in regaining competence.

At a status hearing on March 28, 2012, Defendant's counsel requested additional time to obtain a forensic psychiatrist to examine Defendant at Butner (Doc. #72). The Court granted the request.

Dr. Katayoun Tabrizi, M.D. examined Defendant on May 9, 2012 and submitted a report dated June 3, 2012. Dr. Tabrizi found Defendant incompetent to proceed. Dr.

6

Tabrizi concurred with Drs. Cochrane and Herbel's diagnoses. However, with regard to Defendant's capacity to proceed, Dr. Tabrizi found the combination of Defendant's depressive symptoms, his anxiety in social situations, and his long-standing avoidant and passive personality rendered him incapable of proceeding to trial or entering a plea. Primarily, Dr. Tabrizi found Defendant's hopelessness, helplessness and extreme avoidance of social situations rendered him incapable of assisting his attorney in a rational manner. For example, the anticipated anxiety and discomfort associated with taking the witness stand would have undue influence on Defendant's ability to make rational decisions. The prospect of having to testify and undergo cross-examination would determine Defendant's decision to go to trial or accept a plea, and not his attorney's legal advice. It is also likely that Defendant would refuse to make a statement during sentencing even if advised to do so by his attorney. Dr. Tabrizi offered two rationales for the difference of opinion between her report and the recent Butner report: (1) Defendant's symptoms had not abated with treatment, and she was unable to find an appreciable difference in his clinical presentation to warrant the change in Drs. Cochrane and Herbel's conclusion regarding Defendant's capacity to proceed; and (2) Defendant's capacity to proceed is based on his ability to not only assist his attorney in a rational manner prior to proceedings but also on his ability to participate during actual proceedings.[3]

A competency hearing was scheduled for July 16, 2012 (Doc. #82) but had to be rescheduled because Dr. Bloomfield was unavailable to testify due to illness.

_____

[3] At the hearing, Dr. Tabrizi testified she evaluated Defendant a second time on September 13, 2012, but had not prepared a written report with respect to that evaluation.

7

On August 8, 2012, Drs. Cochrane and Herbel submitted an updated report from Butner reaffirming their opinion that Defendant was competent to proceed. The doctors reported Defendant's condition remained essentially unchanged since the prior report, and his depressive and anxiety/phobic symptoms persisted. Defendant reported considerable distress when having to interact with others, especially in group settings, but was able to behave and interact appropriately when necessary. For example, when a severely mentally ill and intrusive man abruptly entered Defendant's room requesting commissary items, Defendant appropriately handled the situation and was able to appease and convince the individual to leave. Despite experiencing intense anxiety, Defendant is able to behave appropriately, recall important details, and convey information to others. The doctors reported Defendant has consistently declined offers to resume psychotherapy to alleviate his mood symptoms. The doctors reported psychopharmacological treatments and adjustments have resulted in little to no improvement, and his clinical condition has plateaued. The doctors believe further improvement is unexpected unless Defendant avails himself of psychosocial treatments. Drs. Cochrane and Herbel found Defendant showed some improvement in his anxiety over the course of admission (he was calmer in interviews and less tearful), but his depressive symptoms persisted. The doctors concluded there were no changes in his behavior or clinical presentation that suggested a change in his competency status, and they still found him to be competent to proceed.

8

The Court held a competency hearing on September 20, 2012 at which Drs. Cochrane, Tabrizi and Bloomfield testified.[4] The Court held a second hearing on October 2, 2012 at which counsel presented argument.

## II. Analysis

This Court's determination regarding Defendant's competence to stand trial is governed by 18 U.S.C. § 4241(d), which provides that if, after a hearing, "the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." Thus, the initial burden of persuasion is on the movant to establish by a preponderance of the evidence that the defendant is not competent. *United States v. Torres*, No. 08-20767-CR, 2009 WL 595934, at *2 (S.D. Fla. Mar. 6, 2009).

"The legal test for competency is whether the defendant [has] 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and whether he [has] 'a rational as well as factual understanding of the proceedings against

---

[4] The hearing was held using video-conferencing technology. Defendant appeared in Court via video-conferencing from Butner. Counsel for the United States and counsel for Defendant were present in the courtroom. Drs. Cochrane and Tabrizi testified via video-conferencing from Butner. Dr. Bloomfield testified in person.

The transcript of the competency hearing (Doc. #96) will hereinafter be referred to as "Tr." followed by the appropriate page number.

him.'" *United States v. Cruz*, 805 F.2d 1464, 1479 (11ᵗʰ Cir. 1986) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). In the instant case, all of the mental health experts found Defendant to have a rational and factual understanding of the proceedings against him (Tr. 85). However, the experts disagree as to whether Defendant has the ability to rationally assist in his defense.

When determining whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, courts have considered the following factors:

> 1) the state of the defendant's memory, since he should be able to relate pertinent facts, names and events to his attorneys (although the defendant need not remember every fact that trial might encompass); 2) the extent to which relevant evidence could be reconstructed from communications made by the defendant to his counsel or from independent sources; 3) an adequate ability to review and evaluate documents and other written evidence bearing on the case; 4) an appreciation of the Government's evidence against him; 5) the ability to consider the wisdom of taking a course other than standing trial on the merits; 6) the ability to decide objectively whether to exercise his constitutional right to take the stand, and if he does take the stand, the ability to testify in an intelligent, coherent and relevant manner; 7) the ability to remain sufficiently alert and responsive so as to follow and recognize any discrepancies in the testimony of witnesses; and 8) the ability to discuss the testimony with his attorneys and to postulate questions to the witnesses through counsel.

*United States v. Giraldo*, No. 2:09-cr-85-FtM-36SPC, 2011 WL 7946037, at *3 (M.D. Fla. Oct. 24, 2011), adopted at 2012 WL 1890508.

Considering the factors listed above – particularly factors five through eight – in conjunction with the evidence presented at the hearing, the Court finds Defendant lacks sufficient present ability to rationally assist his attorney in his defense, and thus is

incompetent to proceed.[5]  The Court respects and appreciates the thoughtful opinions rendered by all of the experts in this case and acknowledges this is a close call.  However, the Court finds the weight of the evidence favors a finding of incompetency at this time. See U.S. v. Gerlt, No. 09-4-17-01-CR-C-NKL, 2011 WL 110790, at * 1 (W.D. Mo. Jan. 13, 2011) ("In determining a defendant's competency to stand trial, the Court may rely on one of two competing competency opinions given by qualified experts." (citing U.S. v. Ghane, 490 F.3d 1036, 1040 (8th Cir. 2007)). The Court is persuaded by Dr. Tabrizi and Dr. Bloomfield's reports and testimony that Defendant's disorders prevent him from making rational choices and objective decisions so as to render him incapable of assisting counsel in his defense.

Dr. Tabrizi testified Defendant's disorders severely impair his ability to rationally assist his attorney (Tr. 85).  Dr. Tabrizi stated Defendant's severe anxiety will be a major factor in his decision-making, could interfere with legal recommendations, and will drive his decision whether to go to trial more so than the facts of his case.  Id.  Dr. Tabrizi testified Defendant is capable on a cognitive level of listening, processing, and reporting, but he is incapable in the sense that he may not care enough about what happens to him to tell his

---

[5] During oral argument, defense counsel represented he did not believe Defendant was impaired with respect to the first four factors, and the Court agrees (Doc. #98, Transcript of Oral Argument, at 31-32). All of the experts found Defendant to have an appreciation of the Government's evidence against him. All of the experts also found Defendant to be quite smart and to have sufficient cognitive abilities with respect to attention, memory and recall. Dr. Cochrane testified, after the encounter with the intrusive patient, Defendant was able to recall the situation accurately, what he was thinking, what he said, and how it was resolved (Tr. 28). Dr. Cochrane also testified Defendant reads a lot (Tr. 61). At the hearing, although Defendant did not give any visible indication he was paying attention and kept his head lowered during the proceedings, he did respond immediately to any question by the Court, such as whether he was able to hear the testimony in Jacksonville.

11

attorney whether a witness' statement is inaccurate or conflicting with other evidence (Tr. 109-10). Dr. Tabrizi stated Defendant's decision whether to plead guilty or go to trial will be based on his desire to avoid discomfort rather than what is best for him legally (Tr. 108). Dr. Bloomfield similarly testified that the combination of Defendant's disorders – social phobia, major depressive disorder, and an avoidant personality disorder – render him incompetent because he cannot adequately participate in decision-making (Tr. 114, 116).

All of the experts testified about whether Defendant's avoidance of social interaction and refusal to participate in psychotherapy is volitional. All of the experts admitted the issue is complicated, and it is hard to determine how much of Defendant's behavior is volitional. All of the experts appear to agree that a trial will not be a comfortable place for Defendant. Counsel for the United States asked Dr. Cochrane whether Defendant could not participate in proceedings or would not participate in the proceedings by choice (Tr. 29-30). Dr. Cochrane stated it was a difficult question to answer, but was probably both to some degree (Tr. 30). Dr. Cochrane stated Defendant's depression and anxiety and his desire to avoid unpleasant situations play a role in his decisions but there is a volitional component as well. *Id.* Dr. Cochrane stated Defendant is a very shy, timid, avoidant person by nature, and even if he were not depressed and anxious, and did not suffer from clinical disorders, he would not want to sit through the proceedings or testify. *Id.* Dr. Cochrane stated Defendant would not want to do any of these things irrespective of his depression and anxiety. *Id.* Dr. Cochrane acknowledged the depression and anxiety play some role, and it is hard to tease it apart (Tr. 31, 40-41). Dr. Cochrane believed there was a volitional component and a personality component to Defendant's decision to discontinue psychotherapy (Tr. 48-49). Dr. Cochrane stated Defendant's disorders play a role in his

12

decision-making, such as in the decision to testify at trial, but are not the only factors (Tr. 56).  Dr. Tabrizi disagreed with Dr. Cochrane's characterization and believed Defendant's choices were "no more . . . volitional than the behavior of a severely addicted individual" (Tr 90).   Dr. Tabrizi testified the core of Defendant's disability is avoidance, and Defendant's refusal to participate in psychotherapy is a function of his disorder (Tr. 90-91). Dr. Tabrizi testified she would use the word "volitional" very cautiously in Defendant's case (Tr. 91).  Dr. Bloomfield similarly testified that he believed Defendant's refusal to engage in psychotherapy is part of his social phobia and his avoidant personality disorder; while Defendant is making a choice, it is "part and parcel" of his disorder (Tr. 114-15).

All of the experts agreed Defendant's clinical condition has not changed very much since the Court's previous finding of incompetency.  Psychopharmacological treatments have been ineffective (Tr. 26).  Dr. Cochrane stated his opinion as to competency changed because, with additional time and information, he learned and became more aware of what Defendant was capable of doing (Tr. 22).  Dr. Cochrane testified he documented the incident between Defendant and the intrusive patient because it showed Defendant could function adequately even in a situation which caused him extreme anxiety (Tr. 27-28). With all due respect to Dr. Cochrane's opinion, the Court does not see an appreciable difference in Defendant's condition and thus is not convinced Defendant has been restored to competency.[6]

---

[6] Dr. Tabrizi and Dr. Bloomfield offered several suggestions for different treatments that might restore Defendant to competency.  Although Defendant has declined to participate in psychotherapy, the doctors all seemed to indicate that some form of therapy might be of assistance (for example, Dr. Bloomfield suggested "exposure" or "behavior" therapy).  Dr. Cochrane testified he and Dr. Herbel plan to start Defendant on a new drug trial to alleviate his depression and anxiety, which could take several weeks to determine
(continued...)

13

Based on the reports of Dr. Tabrizi and Dr. Bloomfield, and the testimony at the hearings, the Court finds by a preponderance of the evidence that Defendant "is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," 18 U.S.C. § 4241(d), and is, therefore, not competent to stand trial at this time.

### III. Conclusion

Accordingly, pursuant to Title 18, United States Code, Section 4241, Defendant is committed to the custody of the Attorney General, or his duly authorized representative, who shall hospitalize Defendant for treatment in a suitable facility "for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward [,]" and any additional reasonable period of time permitted under Section 4241(d)(2).

Defendant **shall remain in the custody of the designated facility, and shall not be transported back to the Middle District of Florida absent a prior Court Order.** Should it be necessary for the defendant to appear for a subsequent hearing regarding his mental competency, the Court will arrange a **video-conference hearing**.

The custodian of Defendant shall file status reports every sixty (60) days with the Court. Copies of the reports should be furnished to Mr. Alan E. Rosner, Esquire (counsel for Defendant), at 1837 Hendricks Avenue, Jacksonville, Florida 32207, and Mr. D. Rodney

---

[6](...continued)
its effectiveness (Tr. 61-64). The Court believes with additional treatment, there is a likelihood Defendant can be restored to competency.

14

Brown, Esquire, Assistant United States Attorney, at 300 N. Hogan Street, Suite 700, Jacksonville, Florida 32202.

**DONE AND ORDERED** at Jacksonville, Florida this 23d day of October, 2012.

Thomas E. Morris

THOMAS E. MORRIS
United States Magistrate Judge

Copies to:
Asst. U. S. Attorney (Brown)
Alan E. Rosner, Esquire

15