UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

CASE NO.: 3:10-cr-100-J-34TEM

vs.

LUCAS MICHAEL CHANSLER
_____/

## DEFENDANT'S MEMORANDUM ON COMPETENCY

**COMES NOW,** the Defendant, LUCAS CHASLER, through counsel, and files this memorandum regarding the Defendant's competency to stand trial and further would show:

## HEARING ON JULY 16, 2013

The Court conducted a competency hearing on July 16, 2013. The Defendant was present for the hearing. The Defendant has been incarcerated in the Baker County Correctional Facility since the Court entered an order on May 14, 2013 directing the Marshall's Office to transport the Defendant from the Federal Medical Center in Butner, North Carolina. Dr. Steven Bloomfield, an expert medical witness hired by the Defense, conducted his evaluation of the Defendant on June 13, 2013. Dr. Bloomfield conducted a full competency examination of approximately three hours and administered testing including the Minnesota Multiphasic Personality Inventory. Dr. Bloomfield has previously examined the Defendant on a number of occasions and has had the opportunity to review the reports from Butner Federal Medical Center ("Butner"), the

1

Court's previous order, Government documents related to the case, and other previous examinations.  He has had the benefit of hearing the opinions and testimony of Dr. Robert Cochran, the Government's expert.  Dr. Bloomfield has met with the Defendant's parents and has been able to obtain some history through them.

According to Dr. Bloomfield's June 13, 2013 examination, whether it is the result of the Defendant's regression while incarcerated in Baker County or the lack of any appropriate therapy at Butner, he is in worse shape competence-wise than at any other time Dr. Bloomfield has examined him.

Dr. Bloomfield opined that the Defendant's mental illness is the cause of the incompetence, and that the volitional component of the Defendant's failure to participate in some of the therapy is a result of the mental illness itself.  That is, he has no control over his mental illness, and as a result does not avail himself to therapy that might be of some assistance.  In Dr. Bloomfield's opinion, he understands and appreciates the evidence against him, and can relate pertinent facts and events to his attorney.  The problem is making an objective decision as to whether he should exercise his right to have a trial and decide objectively whether to exercise his right to testify.  Dr. Bloomfield believes that not only does the Defendant lack the ability to remain sufficiently alert, responsive, and participate in strategy decisions, but that he does not have the ability to testify in an intelligent, coherent, and relevant manner **as a result of his mental disorder.**

The Government called Dr. Robert Cochran who testified that over a several month period since the Defendant was in custody at the Butner facility after the previous

competency hearing in 2012, Dr. Cochran has only seen the Defendant two or three times, and only for periods of not more that twenty to thirty minutes.   Dr. Cochran did not conduct as extensive of a study and examination as Dr. Bloomfield did.  There was no evidence that Dr. Cochran or his staff, although having an opinion relative to competency, have conducted any competency examination of the Defendant since the previous hearing in 2012.

Dr. Cochran testified that there has been no improvement in the Defendant's condition and all pharmacological and other therapy has not produced any change.  Dr. Cochran testified that the Defendant suffers from the same disorders as when he was first admitted into the facility and that they have not subsided.  He was prescribed atenolol, a beta-blocker to help control the heart rate during times of intense anxiety, but does not treat the social phobia disorder.  There has been no medication and no other therapy that has been able to treat the major depressive disorder or the social phobia.  He indicated that the Defendant was willing to try different medication and was willing to participate in therapy to the extent that he used a self-help workbook in solitude of his cell within the institution.  All without success.

The Defendant was present during the hearings.  He exhibited a constant tremor throughout the hearing, and sat silently during the entire proceeding.   The only verbalization came when he was asked a question.  He had no eye contact with the Court, counsel, or any of the witnesses.  He appeared to have lost a substantial amount weight, and did not appear to have visually observed any of the proceedings, the monitor in front

of him, or Dr. Bloomfield.  Nothing in his courtroom demeanor suggested that there was any improvement in his mental condition.

Mr. Chansler continues to be non-communicative with counsel.  He cannot engage in a dialogue with counsel regarding any issue of the proceedings.  He cannot and will not make any independent decision of what course to choose in the legal proceeding. He will not ask questions and will only give one-word answers to counsel's questions. He is completely disassociated with his legal dilemma.  As Dr. Bloomfield suggested, he is perfectly content, with or without a trial, being found guilty or not guilty, to exist in a room by himself indefinitely.

## LEGAL ANALYSIS/ARGUMENT

In this court's previous order finding Defendant incompetent, the Court outlined a number of factors.  The Defendant's memory, the extent to which relevant evidence could be reconstructed and communicated to counsel, ability to review evidence, and appreciation of the government's evidence against him were some of those factors.  Of particular significance, the Court stated that the Defendant's ability to consider the wisdom of taking a course of action other than standing trial, the ability to decide objectively whether to exercise his right to testify, and if testifying, the ability to do so in an intelligent, coherent, and relevant manner, are important factors. Also, the ability to remain sufficiently alert and responsive so as to recognize discrepancies in the testimony, and the ability to discuss the testimony with his attorney and postulate questions to the witnesses through counsel.  The Court noted that as to these last factors, the Defendant lacked the ability to assist his attorney in his defense.  The Court found that an additional

problem area is that the Defendant may not care enough about what happens to him to tell his attorney whether a witness statement is accurate or if testimony is conflicting.

There was nothing indicated in any of the testimony at this hearing that there has been any change in his social phobia or major depressive disorder.  In the footnote on page 11 of the Court's previous order, the Court observed that the Defendant did not give any visible indication that he was paying attention and kept his head in a lowered position during the proceedings.  There was no change in the Defendant's demeanor at the July 16, 2013 hearing.  The Court further made note of the doctors' testimony that it was difficult to determine how much of the Defendant's behavior was volitional, and that the question of whether the Defendant **could** not participate in proceedings or **would** not participate in the proceedings was a difficult question to answer.  His depression and anxiety and desire to avoid unpleasant situations play a role in his decisions.  The Court also referred to the previous testimony from Dr. Tabrizi that the core of the Defendant's disability is avoidance and refusal to participate in psychotherapy, which is a function of this disorder.  In the July 2013 hearing, the experts agreed that the Defendant's willingness to improve his condition hasn't changed, is still function of the disorder, and it affects his competency.

Here again, after hearing basically the same testimony from Dr. Cochran as in the previous hearing, and testimony from Dr. Bloomfield of the thorough examination in June of 2013 in which he found that the Defendant's condition worsened, the Court has not been presented with anything that would change the finding of incompetence.  The difference however, is with this identical testimony of a mental condition that has not

improved, or worsened, the Court has already previously determined that the Defendant is incompetent.   Had there been any substantive change in Dr. Cochran's testimony regarding the Defendant's competency, or a more thorough examination conducted at Butner, the issue would be more on balance.  Given the lack of any noticeable change at Butner, the Defendant's worsened condition either at Baker or Butner, and the Court's previous finding based on the previous testimony, it is submitted that the government was unable to meet any burden demonstrating that the Defendant is now competent.

The Government psychologist again referred to an incident in which the Defendant encountered a threatening inmate to suggest that at least the Defendant can react rationally at some level to stressful situations.  Decisions of trial strategy, of the wisdom of testifying, and of pleading guilty or not guilty, require a completely different analysis or thought process by a Defendant.  As both Dr. Bloomfield, and previously Dr. Tabrizi testified, the ability to act in an emergency or life threatening situation is merely a survival instinct that only requires decision-making at the lowest and most basic level. The "flight or fight" instinct would allow even a severely disturbed individual to act in an emergency, i.e. run from a burning house or avoid drowning in water.  This cannot be an analogy to thoughtful, objective decision making required for assisting counsel.

Interestingly, in United States vs. Cruz, 805 F 2d 1464, 1479 (11th Cir. 1986), cited by the Court in the previous order, the defendant in that case moved for a competency hearing at the end of the trial.  The Court rejected the claim of incompetency since the opinion of the examining psychiatrist was rendered without the benefit of the Defendant's previous medical or psychiatric records and based upon a single interview.

6

The Cruz Court noted that the trial court had the benefit of its observation of the Defendant's demeanor.   In this matter, Dr. Bloomfield has conducted repeated and extensive examinations of the Defendant as well as reviewed many medical reports and documents.  Dr. Cochran's opinion that the Defendant is, at best marginally competent, is also based on observations that have taken place over a lengthy period.  Unlike *Cruz*, even the Government's physicians found substantial mental disorders that have previously resulted in the Defendant incompetence.

The core of the problem still exists.  The Defendant's mental illness impairs meaningful decision-making.  His ability to exercise any independent judgment and rationally weigh reasons for exercising his right to a trial, pursue a defense, question or impeach a witness, and most importantly, whether to testify are clouded and controlled by his disorder.  Critical decisions that relate to trial strategy, i.e. striking of a juror, pursuing a line of questioning, what testimony to offer in his own defense, are impossible to receive from the Defendant as a result of the disorder.  The ultimate decision of whether to have a trial or plead guilty are the most problematic.  It is not unusual for a Defendant to want neither, but in this case the Defendant's mental disorder render him incapable of making a decision based upon any objective criteria, and are controlled by his mental disorder.  For those reasons, defense counsel would submit that the Defendant still remains incompetent for trial.

Another issue is apparent from the testimony of the latest hearing.  That is, whether the provisions of 18 U.S.C. §§ 4246(a) & (d) should be invoked. The testimony heard by the Court is that known treatment options that are available at

Butner have been exhausted, and not much is going to change.  The mental disorders have been longstanding, and unfortunately, are ingrained in his personality.  They are so severe that the Defendant will not be competent at any time in the foreseeable future. The Defense would submit that the Court should examine this matter to determine if the Defendant meets the criteria under this statute.

In U.S. v. Jackson, 306 F.Supp. 4 (N.D. Calif. 1969), the Court found that the Defendant was incompetent to stand trial because of mental illness and not likely to be cured in the foreseeable future, and therefore must be discharged from federal custody, transferring responsibility for him to the State pursuant to 18 U.S.C. § 4246.   The defendant in Jackson had been in custody for over a year and a half.  The Court found that the mental illness is not transitory, the defendant's need for continuing need for medical care, and because of the danger imposed by his release, federal officials needed to transfer the defendant to the State for appropriate civil commitment.  Not withstanding the current determinations made by the Butner medical facility, the Court has an obligation to make a determination as to whether the Defendant is not presently competent for trial and whether the Defendant's release is likely to create a substantial risk of danger and thus invoke the provisions of § 4246.  U.S. v. Wheeler, 744 F. Supp. 633 (E.D.Pa. 1990)

**WHEREFORE,** the Defendant respectfully prays this Honorable Court would enter an order finding the Defendant not competent to stand trial and committed pursuant to 18 U.S.C. § 4246.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 5, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the Notice of Electronic Filing by First Class Mail to the following non-CF/ECF participants: Sandy Chansler, 295 Edgewater Branch Drive, Jacksonville, FL 32259.

**HARRIS, GUIDI, ROSNER,
DUNLAP & RUDOLPH, P.A.**

**ALAN E. ROSNER, Esquire
1837 Hendricks Avenue
Jacksonville, Florida 32207
(904) 777-7777
Attorney for Defendant
Fla. Bar No.: 0323489
rosner@harrisguidi.com**

9