**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                           CASE NO. 3:10-cr-100-J-34TEM

LUCAS MICHAEL CHANSLER,

        Defendant.

_____

## ORDER ON COMPETENCY

**THIS CAUSE** came before the undersigned to determine the competency of Defendant Lucas Michael Chansler. The Court has considered the Competency Evaluation Reports of Dr. Robert E. Cochrane, Dr. Bryon Herbel and Dr. Stephen I. Bloomfield; the testimony and evidence presented at the evidentiary hearing held on July 16, 2013; arguments presented by counsel in their memoranda (Docs. 120 & 121); and the statements of Defendant at the hearing held on August 28, 2013. For the reasons set forth below, the Court concludes Defendant is competent to participate in pretrial proceedings and to stand trial at this time.

### I. Background

Defendant was arrested on April 16, 2010, on a fifteen count Indictment charging a variety of offenses involving child pornography (Doc. 1). He was subsequently released on a bond requiring home confinement (Doc. 21). At the bond hearing, a psychiatrist testified as to mental conditions for which he had been treating Defendant.

1

Subsequently, during discovery in the case, the United States filed a motion for a competency evaluation of Defendant (Doc. 27).  The Court entered an Order (Doc. 30) that Defendant be evaluated by Dr. Stephen Bloomfield, a forensic psychologist. Dr. Bloomfield met with Defendant twice, on August 23, 2010 and again on August 25, 2010, and submitted a report dated August 31, 2010 (*See* Doc. 34, Government's Exhibit 1).  The Court held a competency hearing on September 2, 2010, and Dr. Bloomfield testified by telephone (Doc. 34).

Dr. Bloomfield performed standard testing of Defendant, including administration of the Minnesota Multiphasic Personality Inventory-II-RF.  He wrote, and testified, that he became concerned because of the positive findings in the test in terms of suicidal ideation. Although Defendant acknowledged suicidal thoughts, he denied any suicidal plan.  The doctor had Defendant return two days later and administered another test, the Millon Clinical Multiaxial Inventory-III,  in further assessing suicide risk.  Dr. Bloomfield concluded Defendant's Axis II classifications fit a combination of a depressive personality and an avoidant personality, as well as a dependant personality with Axis I diagnoses of major depression, recurrent, severe, without psychotic features and an anxiety disorder.

Although the doctor found Defendant to be intelligent and had no limitations of understanding the criminal proceedings in which he is charged, he concluded Defendant was unable to assist in his defense because of his social phobia and anxiety and an avoidance and attendant disorder.  As an example, Dr. Bloomfield said Defendant would not express his thoughts to his attorney, but would think later what he should have told the attorney.  Dr. Bloomfield said Defendant will not participate in discussions with authority figures, although he does participate with his psychologist.  Dr. Bloomfield expressed

concern that the condition would cause difficulty assisting counsel at trial, as well as in pretrial preparation.  Further, Dr. Bloomfield expressed concern about the risk of suicide, but he did say Defendant's mental conditions could be stabilized with medication.  He indicated Defendant expressed that he would like to change his mental situation and has been taking medication prescribed by his family doctor.  However, Dr. Bloomfield said medical treatment to decide which medications would work could best be done in an inpatient treatment facility.

Based on Dr. Bloomfield's report and testimony, the Court found Defendant incompetent to participate in pretrial proceedings and to stand trial (Doc. 36).  The Court ordered Defendant committed to the custody of the attorney general for treatment.  Defendant was committed to the Federal Medical Center, Butner, North Carolina ("Butner"), pursuant to 18 U.S.C. § 4241.

Thereafter, the Court received a report from Butner, dated March 22, 2011 (*see* Doc. 46).  Drs. Robert E. Cochrane, Psy.D.[1] and Byron Herbel, M.D.[2] diagnosed Defendant with social phobia and major depressive disorder. The doctors found Defendant had a factual and rational understanding of the proceedings against him; however, they were concerned about his ability to assist counsel in his defense.  The doctors specifically noted two areas of concern.  First, Defendant took a very passive stance toward his defense, preferring his attorney to handle all matters.  Second, Defendant's decision-making ability appeared heavily influenced by his anxiety and depressive symptoms.  For example, when asked what he would do if his attorney suggested they take the case to trial, he indicated he did

---

[1] Dr. Cochrane is a staff psychologist at Butner.

[2] Dr. Herbel is a staff psychiatrist at Butner.

3

not think he could handle a trial due to overwhelming anxiety. However, when told the alternative would include pleading guilty and would likely require speaking during the plea allocution, Defendant changed his mind and stated he would rather sit silently through a trial than have to speak at all during any proceedings. Other decisions, such as testifying on his own behalf, also appeared impacted by his intense desire to avoid anxiet. Accordingly, Drs. Cochrane and Herbel expressed the opinion that Defendant was mentally incompetent to proceed. However, the doctors believed Defendant's competency could possibly be restored with additional hospitalization and treatment.

Following a status competency hearing on April 4, 2011 at which both counsel agreed with Drs. Cochrane and Herbel's report, the Court found Defendant incompetent to proceed and ordered Defendant committed to the custody of the attorney general for further treatment (Doc. 46).

The Court received a report from Butner, dated October 18, 2011. In the report, Drs. Cochrane and Herbel expressed the opinion that Defendant had been restored to competency and was competent to stand trial. Upon readmission, Defendant's clinical presentation remained essentially unchanged. He expressed a long-term goal of reducing his symptoms, but his desire to avoid the temporary anxiety experienced in psychotherapy and exposure exercises caused him to terminate psychotherapy prematurely and he could not be motivated to continue this treatment. Psychopharmacological interventions produced limited benefit. Defendant showed some improvement in his anxiety but his depressive symptoms continued. Drs. Cochrane and Herbel found Defendant had a solid factual and rational understanding of the charges against him and legal proceedings.

The doctors noted there were two issues which posed a potential problem with Defendant properly assisting counsel in his defense.  First, Defendant approached his case in a passive manner in that he prefers others, such as his parents and his attorney, to make decisions for him.  When asked about decisions he might have to make in court, such as pleading guilty or going to trial, Defendant would initially and almost reflexively, reply that he would do whatever his attorney or family suggested.  However, the doctors found that when pressed to make an independent choice on issues pertaining to fundamental legal rights, Defendant would eventually express a preference and provide his reasoning for it. He eventually acknowledged that while listening to the advice of others was important, he would ultimately have to make the final decision.  The doctors found Defendant's behavior during his admission indicated that, while it was difficult for him, he was capable of asserting himself when necessary.  Second, the doctors noted the other potential barrier to competency had to do with the influence of Defendant's psychiatric symptoms on his decision-making.  The doctors noted Defendant's pessimistic view of his future and his desire to avoid discomfort shape his decisions, at least in part.  However, Defendant recognized that, regardless of the decisions he must make, he will experience significant anxiety during the proceedings and recognized that other factors, such as the severity of potential sentence, would enter into his decision as well.  Additionally, Defendant demonstrated greater flexibility in his thinking and was more willing to consider and discuss legal options than during his first admission.  Thus, Drs. Cochrane and Herbel concluded that despite Defendant's mental illness, ongoing symptoms of anxiety and depression, and mild competency deficits, Defendant's impairments did not significantly interfere with his competency to proceed.

Following receipt of the report from Butner, the Court held a status conference on November 4, 2011 (Doc. 57).  Defendant's counsel requested the Court allow Dr. Bloomfield to evaluate Defendant again.  The Court granted the request.

Dr. Bloomfield re-examined Defendant on March 2, 2012 for approximately three to three and a half hours.  Dr. Bloomfield submitted a report dated March 13, 2012 in which he found Defendant "incompetent [or] at least semi-incompetent."  Dr. Bloomfield administered two instruments – Inventory of Legal Knowledge ("ILK") and Miller Forensic Assessment of Symptoms Test ("M-Fast") – that indicated Defendant was not malingering. Dr. Bloomfield found Defendant suffered from a significant mental illness with ongoing symptoms of anxiety, depression, social avoidance, and dependency which impair his ability to be considered fully competent.  Dr. Bloomfield did not believe Defendant could assist in a rational basis with his defense and would have a great deal of difficulty making necessary decisions involving issues such as whether or not he should enter into a plea agreement or testify at trial.  Dr. Bloomfield stated it took tremendous effort for Defendant to participate and this would significantly interfere with his ability to assist in his defense. Dr. Bloomfield recommended Defendant remain at Butner to determine if other medications, other psychiatric interventions, or some form of "exposure" therapy might assist him in regaining competence.

At a status hearing on March 28, 2012, Defendant's counsel requested additional time to obtain a forensic psychiatrist to examine Defendant at Butner (Doc. 72).  The Court granted the request.

Dr. Katayoun Tabrizi, M.D. examined Defendant on May 9, 2012 and submitted a report dated June 3, 2012.  Dr. Tabrizi found Defendant incompetent to proceed.  Dr.

Tabrizi concurred with Drs. Cochrane and Herbel's diagnoses.  However, with regard to Defendant's capacity to proceed, Dr. Tabrizi found the combination of Defendant's depressive symptoms, his anxiety in social situations, and his long-standing avoidant and passive personality rendered him incapable of proceeding to trial or entering a plea. Primarily, Dr. Tabrizi found Defendant's hopelessness, helplessness and extreme avoidance of social situations rendered him incapable of assisting his attorney in a rational manner.  Dr. Tabrizi believed the anticipated anxiety and discomfort associated with taking the witness stand would have undue influence on Defendant's ability to make rational decisions.   The prospect of having to testify and undergo cross-examination would determine Defendant's decision to go to trial or accept a plea, and not his attorney's legal advice.  Dr. Tabrizi found it was likely that Defendant would refuse to make a statement during sentencing even if advised to do so by his attorney.   Dr. Tabrizi offered two rationales for the difference of opinion between her report and the recent Butner report: (1) Defendant's symptoms had not abated with treatment, and she was unable to find an appreciable difference in his clinical presentation to warrant the change in Drs. Cochrane and Herbel's conclusion regarding Defendant's capacity to proceed; and (2) Defendant's capacity to proceed is based on his ability to not only assist his attorney in a rational manner prior to proceedings but also on his ability to participate during actual proceedings.

A competency hearing was scheduled for July 16, 2012 (Doc. 82) but had to be rescheduled because Dr. Bloomfield was unavailable to testify due to illness.

On August 8, 2012, Drs. Cochrane and Herbel submitted an updated report from Butner reaffirming their opinion that Defendant was competent to proceed.  The doctors reported Defendant's condition remained essentially unchanged since the prior report, and

his depressive and anxiety/phobic symptoms persisted.  Defendant reported considerable distress when having to interact with others, especially in group settings, but was able to behave and interact appropriately when necessary.  For example, when a severely mentally ill and intrusive man abruptly entered Defendant's room requesting commissary items, Defendant appropriately handled the situation and was able to appease and convince the individual to leave.  Despite experiencing intense anxiety, Defendant was able to behave appropriately, recall important details, and convey information to others.  The doctors reported Defendant had consistently declined offers to resume psychotherapy to alleviate his mood symptoms.  The doctors reported psychopharmacological treatments and adjustments had resulted in little to no improvement, and his clinical condition had plateaued.  The doctors stated further improvement was unexpected unless Defendant availed himself of psychosocial treatments.  Drs. Cochrane and Herbel found Defendant showed some improvement in his anxiety over the course of admission (he was calmer in interviews and less tearful), but his depressive symptoms persisted.  The doctors concluded there were no changes in his behavior or clinical presentation that suggested a change in his competency status, and they still found him to be competent to proceed.

The Court held a competency hearing on September 20, 2012 at which Drs. Cochrane, Tabrizi and Bloomfield testified (Doc. 96).[3]  The Court held a second hearing on October 2, 2012 at which counsel presented argument (Doc. 98).

---

[3] The hearing was held using video-conferencing technology.  Defendant appeared in Court via video-conferencing from Butner.  Counsel for the United States and counsel for Defendant were present in the courtroom.  Drs. Cochrane and Tabrizi testified via video-conferencing from Butner.  Dr. Bloomfield testified in person.

On October 23, 2012, the Court entered an Order finding incompetent (Doc. 101). The Court found it was a "close call," but the weight of the evidence favored a finding of incompetency at that time.  *Id.* at 11.  The Court was persuaded by Dr. Tabrizi and Dr. Bloomfield's reports and testimony that Defendant's social phobia and anxiety prevented him from making rational choices and objective decisions so as to render him incapable of assisting counsel in his defense.  *Id.*  The Court also noted Defendant's disorders presented a complicated question as to how much of his avoidance of social interaction was "volitional."  *Id.* at 12.  Accordingly, Defendant remained in the custody of Butner pursuant to  18 U.S.C. § 4241.

The Court received a report dated January 10, 2013 from Butner.  Drs. Cochrane and Herbel reported Defendant was behaviorally stable and his mental status remained essentially unchanged since the July 2012 report.  Defendant remained housed on the intensive treatment/transitional unit because he refused to reside on an open mental health unit.  He continued to decline offers to resume psychotherapy to help alleviate his mood symptoms because the stress and anxiety he experienced during the therapeutic process was too intolerable for him.  Defendant agreed to review a self-help workbook about anxiety.  After a month, Defendant had reviewed approximately three chapters of the book. He indicated having "no breakthrough" or improvement of his symptoms, but indicated he would continue to read the book and attempt to apply the techniques.

Drs. Cochrane and Herbel reaffirmed Defendant's diagnoses of social phobia and major depressive disorder.  They reported psychopharmacological treatments and adjustments had resulted in little to no improvement.  Defendant's clinical conditioned had

plateaued.   The doctors indicated no further improvement was likely unless Defendant availed himself of psychosocial treatments.

In conclusion, Drs. Cochrane and Herbel found no change in Defendant's competency status; thus, they still believed him to be competent to proceed.  The doctors acknowledged Defendant suffers from a mental illness and experiences ongoing symptoms of anxiety and depression, but concluded his impairments do not significantly interfere with his competency to proceed.

The Court received a second report from Butner dated April 5, 2013.  The report reflected Defendant had consented to a trial of new medication.  However, after four weeks, Defendant reported no benefit in his anxiety symptoms.   Defendant asked to stop the medication due to side effects and lack of benefit.  Defendant continued to decline offers to resume psychotherapy and was not willing to consider short and long term goals, which was an effort to increase his motivation and activity level.  Defendant agreed to continue reviewing the self-help workbook about anxiety, which he did in the solitude of his room. Defendant indicated little improvement of symptoms as a result.   In conclusion, Drs. Cochrane and Herbel continued to maintain that Defendant's ongoing symptoms of anxiety and depression do not significantly interfere with his ability to proceed.

On May 13, 2013, the parties agreed at a Status Conference to have Defendant returned to the Middle District of Florida for purposes of a competency hearing (Doc. 111). The Court directed the U.S. Marshals' Office to transport Defendant from Butner to the Federal Courthouse (Doc. 112).  On May 28, 2013, Defendant filed a motion requesting Dr. Bloomfield to conduct a competency evaluation at Baker County Jail facility (Doc. 113). The Court granted the Order (Doc. 114).

10

Dr. Bloomfield submitted a report dated June 25, 2013.  Dr. Bloomfield indicated he conducted a psychological evaluation of Defendant at Baker County Jail on June 13, 2013. Dr. Bloomfield agreed with the diagnoses of Drs. Cochrane and Herbel.  Dr. Bloomfield indicated Defendant was not currently taking any medication.  Dr. Bloomfield administered the Minnesota Multiphasic Personality Inventory Second Edition-2-RF, which is aids clinicians in the assessment of mental disorders, identification of specific problem areas, and treatment planning in a variety of settings.  Defendant was able to complete the task, and seemed more comfortable when completing the questionnaire than when interacting with Dr. Bloomfield.  Defendant's responses indicated there was a risk of suicidal ideation, demoralization, depression, helplessness, hopelessness, self-doubt, stress, worry, and anxiety.  The test indicated Defendant's interpersonal difficulties include passivity, social avoidance, social anxiety, and dislike of people and being around them.  Dr. Bloomfield noted Defendant "over endorsed" some items.

Dr. Bloomfield reported Defendant indicated considerable emotional distress, which was perceived by Defendant "as a crisis."  Defendant reported a significant lack of positive emotional experience, pronounced anhedonia and marked lack of interest.  Defendant was pessimistic.  He was at risk for suicide ideation, but not suicide.

Dr. Bloomfield did not find any problematic areas in terms of Defendant's understanding of the charges or possible sentencing.  Dr. Bloomfield stated Defendant's problem areas are his ability to interact with his own attorney and his ability to enter into reasonable decision making "given the high level of his condition."  Dr. Bloomfield found Defendant should be able to relate pertinent facts and events to his attorney because his memory is not deficient.  Dr. Bloomfield found Defendant has an appreciation of the

government's evidence against him, but does not have the ability to consider the wisdom of taking a course other than standing trial on its merits, the ability to decide objectively whether to exercise his constitutional right to take the stand, or, if he did take the stand, to testify in an intelligent, coherent, and relevant manner.  Dr. Bloomfield stated Defendant's psychological condition impairs this process.  Dr. Bloomfield stated Defendant does not have the ability to remain sufficiently alert and responsive so as to follow and recognize any discrepancies in the testimony of witnesses, and Defendant does not have the ability to discuss testimony with his attorney or suggest questions to the witnesses through counsel. Dr. Bloomfield reported Defendant "appeared worse in shape than he was at any of the other times that I have seen him."  Dr. Bloomfield concluded Defendant had not been restored to competence and remained incompetent to proceed.

The Court held a competency hearing on July 16, 2013 at which Drs. Bloomfield and Cochrane testified (Doc. 124).[4]  The parties presented argument via memoranda submitted on August 5, 2013 (Docs. 120 & 121).  The Court held a second competency hearing on August 28, 2013 at which Defendant and counsel were present (Doc. 128).

**Dr. Bloomfield's testimony**

Dr. Bloomfield testified he met with Defendant for two and a half hours of testing and interview on June 13, 2013 at Baker County Jail (Tr. 11).  Dr. Bloomfield testified, in his opinion, Defendant has not been restored and remains incompetent to proceed.  In his opinion, Defendant would be unable to interact with his counsel or communicate with his

---

[4] Defendant, his counsel, and counsel for the United States were present in the courtroom. Dr. Bloomfield testified in person. Dr. Cochrane testified via video-conferencing from Butner.

The transcript of the July 16, 2013 competency hearing (Doc. 124) will hereinafter be referred to as "Tr." followed by the appropriate page number.

counsel on significant issues that would impact his defense, although he could communicate with his attorney about superficial or simple issues which do not make him anxious (Tr. 14, 28, 34). Dr. Bloomfield believes Defendant cannot enter into reasonable decision-making, because Defendant's only response to the question "how would you make this decision?" is "I'd ask my lawyer, my mother, my father" (Tr. 14). Dr. Bloomfield stated Defendant would not be able to testify (Tr. 14-15). Dr. Bloomfield testified Defendant's problems arise when he has to interact rationally, lucidly and coherently, and when he has to engage in discussion and decision-making (Tr. 15). Dr. Bloomfield stated Defendant would withdraw or freeze if subject to cross-examination (Tr. 15-16). Dr. Bloomfield stated Defendant's reluctance to testify is due to high levels of anxiety, phobias, depression and an avoidant personality that causes him to withdraw.

On cross examination, Dr. Bloomfield stated Defendant can answer a direct question when asked, and he does not have any cognitive problems (Tr. 24). However, Defendant cannot enter into meaningful decision-making because of his disorders (Tr. 25). Dr. Bloomfield said he spent a quarter to a third of his interview asking Defendant questions about how he would handle certain differences with his attorney. *Id.* Defendant continually replied that he would defer to his attorney or his parents on matters such as entering into a plea agreement. *Id.* However, Defendant has no problems talking about factual subjects, such as the charges against him, the possibility of incarceration, and the roles of the lawyers and judge in the proceedings (Tr. 25-26). Dr. Bloomfield also testified that resolution of this case would reduce Defendant's anxiety, even if the resolution was negative, such as being found guilty (Tr. 44).

13

The Court questioned Dr. Bloomfield about his use of the term "overendorsed" in his report.  Dr. Bloomfield testified that Defendant "sees himself as much more disordered than most people do" (Tr. 87).   Defendant answers questions more severely and "kind of overreports" his disability and his tension and stress (Tr. 87-88).  Dr. Bloomfield stated the "overendorsement" has become more apparent in Defendant's more recent interviews with him (Tr. 88-89).  Dr. Bloomfield acknowledged the "overendorsement" could be taken to mean "exaggeration," however he believes Defendant overendorses because that he how he perceives himself, not because he is intentionally exaggerating (Tr. 89).

**Dr. Cochrane's Testimony**

Dr. Cochrane testified he visited with Defendant two or three times a month during the course of Defendant's stay at Butner (Tr. 51).  Dr. Cochrane testified this was a difficult case and a close call, but he believes Defendant has sufficient ability to be competent (Tr. 57).  Dr. Cochrane testified that Defendant has the ability to consider the wisdom of taking a course other than standing trial on the merits (Tr. 58).  Dr. Cochrane testified Defendant has the ability to decide objectively whether to testify at trial and to testify in an intelligent and coherent manner (Tr. 58-59).   Dr. Cochrane acknowledged it would be difficult for Defendant because his conditions influence his decisions to some degree, but Dr. Cochrane ultimately believed Defendant has the ability to make those decisions (Tr. 59)

Dr. Cochrane testified Defendant has the ability to remain sufficiently alert and responsive so as to follow and recognize any discrepancies in the testimony of witnesses (Tr. 60-61).  Dr. Cochrane testified that Defendant has the ability to answer relevantly any questions posed by his attorney (Tr. 61).  Dr. Cochrane stated Defendant is very passive and respectful.  *Id.*  Dr. Cochrane stated that as a passive individual, Defendant prefers

14

others to take charge and make decisions, but when pressed, he can do more and has sufficient ability to interact, engage and relate to his attorney and other people in court (Tr. 61-62). Dr. Cochrane testified Defendant has the ability to discuss testimony with his attorney and to participate in the formulating of questions to witnesses (Tr. 62). Dr. Cochrane stated he agreed with Dr. Bloomfield as to diagnosis of Defendant's conditions, but disagreed with Dr. Bloomfield's assessment of Defendant's abilities (Tr. 63). Dr. Cochrane testified Defendant would be able to independently make decisions and exercise judgment in assisting in his own defense, despite his illness and the influence it has on his behavior (Tr. 74-75). Dr. Cochrane testified he believed Defendant would not simply acquiesce to questions asked on cross-examination, but would answer to the best of his ability (Tr. 75-76).

Dr. Cochrane stated he formed his beliefs after observing Defendant during the course of many months. *Id.* Dr. Cochrane explained that as he has gotten to know Defendant and to talk with him, he found that although Defendant is an extremely anxious individual who prefers to avoid discussion, if Defendant is pushed a little to answer questions, he shows that he is capable of doing it. *Id.* Defendant can remember past conversations, which shows he pays attention and has recall. *Id.* Dr. Cochrane said that at times Defendant would shut down and not want to talk, but when Dr. Cochrane pushed him, Defendant showed him through relevant responses that he was attending to the questions and could answer them. *Id.* Dr. Cochrane stated "when push [comes] to shove" Defendant is able to manage situations despite intense anxiety (Tr. 60).

Dr. Cochrane referred to an incident when Defendant had an anxiety-provoking situation with another inmate who intrusively entered Defendant's cell. *Id.* Defendant was

15

able to verbalize to the individual enough information to de-escalate the matter and then recounted the matter to Dr. Cochrane accurately some time later. *Id.* Dr. Cochrane said that was an example of a situation where Defendant showed Dr. Cochrane that he had the capacity to do more than Dr. Cochrane initially believed. *Id.* Dr. Cochrane testified Defendant was given a job assignment in the vocational workshop near his unit, and his supervisor noted he was pleasant, appropriate, followed instructions, and completed tasks (Tr. 81). However, Defendant did not want to do the work because he was anxious about it, so he asked to stop and was given permission to stop working. *Id.* Dr. Cochrane testified Defendant visits with his parents on a regular basis (Tr. 83).

Dr. Cochrane testified he asked Defendant to work on his own with a self-help book, which Defendant agreed to do (Tr. 53). Defendant discussed the matter with his parents, who purchased the book for him (Tr. 53-54). Defendant shared that he had applied some of the techniques but did not noticeable any significant changes in his anxiety level (Tr. 54). Dr. Cochrane testified that although this technique was not successful in reducing Defendant's anxiety, it was successful in the sense that Defendant cooperated and made an effort to apply the techniques, which indicates some volition on Defendant's part (Tr. 55).

Dr. Cochrane testified that Defendant's conditions would not likely improve unless he availed himself of psychotherapy treatment (Tr. 57, 83). Dr. Cochrane testified it was Defendant's choice not to participate in psychotherapy (Tr. 56).

## II. Analysis

This Court's determination regarding Defendant's competence to stand trial is governed by 18 U.S.C. § 4241(d), which provides that if, after a hearing, "the court finds

by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General . . . for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." Thus, the initial burden of persuasion is on the movant to establish by a preponderance of the evidence that the defendant is not competent. *United States v. Torres*, No. 08-20767-CR, 2009 WL 595934, at *2 (S.D. Fla. Mar. 6, 2009).

"The legal test for competency is whether the defendant [has] 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and whether he [has] 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Cruz*, 805 F.2d 1464, 1479 (11th Cir. 1986) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). In the instant case, all of the mental health experts agree that Defendant is quite intelligent and has a rational and factual understanding of the proceedings against him. However, the experts disagree as to whether Defendant has the ability to rationally assist in his defense.

When determining whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, courts have considered the following factors:

> 1) the state of the defendant's memory, since he should be able to relate pertinent facts, names and events to his attorneys (although the defendant need not remember every fact that trial might encompass); 2) the extent to which relevant evidence could be reconstructed from communications made

by the defendant to his counsel or from independent sources; 3) an adequate ability to review and evaluate documents and other written evidence bearing on the case; 4) an appreciation of the Government's evidence against him; 5) the ability to consider the wisdom of taking a course other than standing trial on the merits; 6) the ability to decide objectively whether to exercise his constitutional right to take the stand, and if he does take the stand, the ability to testify in an intelligent, coherent and relevant manner; 7) the ability to remain sufficiently alert and responsive so as to follow and recognize any discrepancies in the testimony of witnesses; and 8) the ability to discuss the testimony with his attorneys and to postulate questions to the witnesses through counsel.

*United States v. Giraldo*, No. 2:09-cr-85-FtM-36SPC, 2011 WL 7946037, at *3 (M.D. Fla. Oct. 24, 2011), adopted at 2012 WL 1890508 (citing *United States v. Passman*, 455 F. Supp. 794, 795-97 (D.D.C. 1978)).  However, "[n]one of the above factors alone control the Court's determination of whether the defendant can rationally assist his counsel.  They merit different rankings of importance, depending on the factual and legal complexity of the particular case, the projected length of trial and the number of witnesses to be called." *Passman*, 455 F. Supp. at 796-97.  "[T]he question comes down to whether, in the light of the personal intellectual or emotional deficiencies of the accused he can perform the functions essential to the fairness and accuracy of the particular proceedings in which he is presently involved."  *United States v. Wilson*, 263 F. Supp. 528, 532 (D.D.C. 1966).

In its previous order finding Defendant incompetent, the Court found Defendant lacked sufficient present ability to rationally assist his attorney in his defense and was thus incompetent to proceed.  The Court particularly focused on factors five through eight listed above, because all parties and experts indicated Defendant was not impaired with respect

to the first four factors.[5]   The Court stated it was a close call and indicated its belief that there was a likelihood Defendant could be restored to competency.

This case is certainly unique in nature and still presents a close call.  However, based upon the expert testimony and reports, and the Court's own interaction with Defendant, the Court finds Defendant competent to stand trial at this time.  The Court notes Dr. Cochrane's initial observations and conclusions about Defendant's competency in the March 22, 2011 report (i.e. the first report received from Butner) mirror those currently held by Dr. Bloomfield.   Dr. Cochrane testified, although there has been little appreciable difference in Defendant's clinical presentation between Dr. Cochrane's initial finding of incompetency and his subsequent findings of competency, his opinion changed because he became better acquainted with Defendant and he gained a better understanding of Defendant's capabilities.  Dr. Cochrane testified Defendant has sufficient ability with respect to factors five through eight listed above.  Specifically, Dr. Cochrane testified Defendant has the ability to consider the wisdom of taking a course other than standing trial on the merits; to decide objectively whether to testify at trial and to testify in an intelligent and coherent manner; to remain sufficiently alert and responsive so as to follow and recognize any

---

[5] During oral argument on October 2, 2012, defense counsel represented he did not believe Defendant was impaired with respect to the first four factors, and the Court agreed (Doc. 98, Transcript of Oral Argument on October 2, 2012, at 31-32).  At the previous competency hearing, all of the experts found Defendant to have an appreciation of the Government's evidence against him.  All of the experts also found Defendant to be quite smart and to have sufficient cognitive abilities with respect to attention, memory and recall. Dr. Cochrane testified, after the encounter with the intrusive patient, Defendant was able to recall the situation accurately, what he was thinking, what he said, and how it was resolved (Doc. 96, Transcript of September 20, 2012 Competency Hearing, at 28).  Dr. Cochrane also testified Defendant reads a lot.  *Id.* at 61.

discrepancies in the testimony of witnesses; and to discuss testimony with his attorney and to participate in the formulating of questions to witnesses.

The Court is persuaded by Dr. Cochrane's testimony and his joint report with Dr. Herbel that, although there has been little change in Defendant's clinical presentation, Defendant is competent to proceed. Drs. Cochrane and Herbel have benefitted from a greater amount of interaction with Defendant and have had greater opportunity to observe Defendant's behavior and abilities in anxiety-inducing situations. Dr. Cochrane provided the Court with examples where Defendant acted rationally during anxiety-inducing situations requiring social interaction. Further, Dr. Cochrane provided examples of situations where Defendant made rational decisions based on self-interest. Criminal proceedings induce anxiety for most participants, and it is not surprising that a defendant would make some choices, such as whether to plead guilty or to take the stand, out of a desire to lessen such anxiety. Although Defendant may take a passive role in his defense, the Court is convinced that Defendant has sufficient ability to consult with his attorney with a reasonable degree of rational understanding. *Dusky*, 362 U.S. at 402. The Court is persuaded by Dr. Cochrane's testimony that Defendant is able to independently make decisions and exercise judgment in assisting in his own defense, despite his illness and the influence it has on his behavior.

Although the Court appreciates Dr. Bloomfield's thoughtful opinions on this matter, the Court is not persuaded that Defendant's statements that he would rely on the advice of his counsel or his parents are irrational, suggest an inability to engage in reasonable decision-making, or otherwise indicate incompetency. It is quite common for a defendant to consult with his family and rely on the advice of counsel when making decisions such as

20

whether to plead guilty or proceed to trial.  *See, e.g., United States v. Attar*, 38 F.3d 727, 733 n.2 (4th Cir. 1994) ("A defendant's desire to spare his family the embarrassment of trial is not sufficient to render his decision to plead guilty 'involuntary' in the constitutional sense; if it were, virtually every guilty plea would be invalid, for a defendant can almost always claim that he entered into it in part to spare himself or his family the embarrassment of trial."); *United v. Pellerito*, 878 F.2d 1535, 1541 (1st Cir. 1989) ("Criminal prosecutions are stressful experiences for nearly all concerned – particularly defendants and their families. It is to be expected that feelings will run strong within a family unit and that loved ones will advise, counsel, implore, beseech, and exhort defendants to take – or abjure – myriad courses of action."); *Lunz v. Henderson*, 533 F.2d 1322, 1327 (2nd Cir. 1976) ("Advice even strong urging by those who have an accused's welfare at heart, based on the strength of the State's case and the weakness of the defense, does not constitute undue coercion."). Indeed, Defendant's counsel has a duty to provide advice and make recommendations on such matters.   Additionally, Defendant need not be willing to engage in extensive, in-depth strategy discussions with his attorney in order to be found competent.   It is also not required that Defendant demonstrate a desire to actively participate in jury selection, to question witnesses or to testify in order for him to be found competent.   Defendant need not even desire to be present in the courtroom during trial, as he can knowingly and voluntarily waive this right.  *See* Fed. R. Crim. P. 43; *Taylor v. United States*, 414 U.S. 17, 20 (1973).  All that is required is that Defendant have sufficient present ability to consult with his attorney with a reasonable degree of rational understanding.  *See, e.g., United States v. Jones,* 200 Fed. Appx. 915, 921 (11th Cir. 2006) ("Even if [defendant] was at times uncommunicative with his counsel, periods of uncooperativeness alone are insufficient to

support a finding of incompetence."); *United States v. Hogan*, 986 F.2d 1364, 1373 (11th Cir. 1993) ("Even perfectly competent defendants often do not fully comprehend the intricacies of some of the defensive theories offered by their lawyers.  That level of comprehension is not a requirement of competency."); *United States v. Merriweather*, 921 F.Supp.2d 1265, 1304 (M.D. Ala. 2013) ("[T]he *Dusky* standard refers to the *ability* of a defendant to communicate with his attorneys, not his *willingness* to communicate with his attorney.  Being able but unwilling to communicate with one's attorney does not make a defendant incompetent to stand trial.").

The Court has also closely considered Dr. Bloomfield's testimony that Defendant, although not malingering, may be "overendorsing" or exaggerating his anxiety, as well as Dr. Bloomfield's testimony that resolution of this case may actually reduce Defendant's anxiety.  This case has always presented a difficult question as to how much of Defendant's refusal to participate is volitional.  Dr. Cochrane's testimony and Defendant's actions suggest Defendant's reticence has a volitional component that cannot be ignored by the Court.

In reaching its competency determination, the Court is not limited solely to evaluating medical opinions; it may rely on a variety of other factors, including observation of the defendant's behavior.  *United States v. Nichols*, 56 F.3d 403, 411 (2nd Cir. 1995) (citing *United States v. Hemsi*, 901 F.2d 293, 295-96 (2nd Cir. 1990)); *see also United States v. Cruz*, 805 F.2d 1464, 1479 (11th Cir. 1986) (noting trial court had "benefit of its observations of defendant's demeanor").  The Court has the benefits of its own observations of Defendant.  Defendant's anxiety appeared to lessen over the course of the August 28, 2013 hearing, which lasted almost forty-five minutes and involved extensive interaction between

Defendant and the Court.    Although he kept his head lowered during most of the proceeding, Defendant answered questions coherently, appropriately and intelligently.[6] Although his answers were not verbose, they indicated an ability to engage in independent thinking and the ability to remain alert and responsive.   Defendant demonstrated he was capable of behaving appropriately, recalling important details and conveying information to others.   Defendant's behavior demonstrates he is capable of rationally assisting his counsel, with some measure of patience and perseverance on counsel's part.[7]

The duty to ensure a fair trial for Defendant is continual and the Court recognizes that it must be alert to circumstances suggesting a change in Defendant's condition.  This responsibility is shared by both Defendant's counsel and government counsel who have close contact with him.  At this point, however, based upon all of the evidence before it, the Court finds Defendant is presently competent to stand trial.

---

[6] The video hearings often involved a brief delay in response for transmission.  In person, Defendant had little, if any, hesitancy in responding to the Court's questions, albeit with short answers.   For example, Defendant immediately recalled that he liked and got along with Dr. Herbel, his treating psychiatrist at Butner (Doc. 128, Transcript of August 28, 2013 hearing, at 13).   The times when Defendant did hesitate before answering, it appeared to the Court that he was thinking about his response, such as when he recalled the name of a childhood friend.  *Id.* at 21.

[7] The Court is not persuaded by statements of Defendant's counsel that their time together has thus far been unproductive due to Defendant's condition.  Defendant's counsel has admittedly spent very little time with Defendant in the past two years.  In fact, defense counsel did not visit Defendant at any time during Defendant's stay at Butner.  Moreover, counsel has not visited Defendant since he was transported to Baker County Jail (Doc. 128, Transcript of August 28, 2013 hearing, at 4).   Thus, there appears to have been little opportunity for Defendant to interact with and become familiar with his counsel.  There also appears to have been little opportunity for counsel to form an opinion as to Defendant's ability to provide assistance.

## III. Conclusion

Thus, based upon the testimony presented to the Court, along with consideration of the expert reports and the Court's own observations of Defendant's behavior, the Court finds Defendant is not suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.  Under the totality of the circumstances, the Court finds Defendant is competent to stand trial.

**DONE AND ORDERED** at Jacksonville, Florida this 23rd day of September, 2013.

THOMAS E. MORRIS
United States Magistrate Judge

Copies to:
Asst. U. S. Attorney (Brown)
Alan E. Rosner, Esquire

24