UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 3:10-cr-100-J-34TEM

LUCAS MICHAEL CHANSLER

**UNITED STATES' RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO REINSTATE CONDITIONS OF RELEASE**

The United States of America, by and through the undersigned Assistant United States Attorney, files its response in opposition to defendant's motion to reinstate conditions of release (Doc. 131), and states as follows:

1. Defendant is charged with committing crimes involving the sexual exploitation of children, that is, defendant coerced, used, and persuaded his minor victims to produce pornographic videos of themselves and transmit them to him. Doc. 1. If the children refused, defendant threatened them through extortion to compel compliance. Congress has determined that production, receipt, distribution, and possession of child pornography constitute crimes of violence. See 18 U.S.C. § 3156(a)(4)(C).

2. In a consensual interview conducted on January 8, 2010, defendant admitted his criminal conduct. Also on that day, law enforcement seized defendant's computer media which contained a large cache of child pornography, much of which was produced by defendant, painstakingly collected, and

meticulously catalogued by victim name.   Over a three year period, defendant systematically stalked, targeted, extorted, and sexually victimized approximately 350 children across the United States, Canada, and the United Kingdom, 103 of whom have been positively identified by the FBI.   It is difficult to imagine the terror that defendant visited upon these children through this online sexual abuse.   The FBI reports that this is the largest child "sextortion" case ever prosecuted in the United States, at least in terms of the sheer number of victims.

     3.     On April 29, 2010, the United States sought to have defendant detained in this case.   The Court denied this request and released defendant on conditions.

     4.     In August 2010, upon motion of the United States, defendant was examined for competency to stand trial.   On September 2, 2010, the Court held a competency hearing and heard testimony from Dr. Stephen Bloomfield, a forensic psychologist.   Dr. Bloomfield testified that defendant acknowledged suicidal thoughts, but denied any suicidal plan, and Dr. Bloomfield also expressed concern about the risk of suicide.   Doc. 36 at 2.   Based on these concerns, among others, the Court revoked defendant's bond and committed him to the custody of the U.S. Marshal for a custodial competency evaluation.   Docs. 34, 36 at 4.

     5.     Over the course of the next three years, defendant was evaluated for competency in a custodial setting by both government and defense experts.   The experts generally agreed on his diagnosis (that he suffered from a mental illness,

severe anxiety, social phobia, and major depressive disorder), but disagreed on his competency to stand trial.  On October 23, 2012, the Court determined that defendant was not competent to stand trial.  Doc. 101.

6. Defendant's custodial evaluation continued at the Federal Medical Center in Butner, North Carolina until defendant was transported to the Baker County Jail in the spring of 2013.  On June 13, 2013, defense expert Dr. Bloomfield examined defendant, and noted that defendant's responses to questioning revealed "a risk of suicidal ideation, demoralization, depression, helplessness, hopelessness, self-doubt, stress, worry, and anxiety."  Doc. 130 at 11.

7. On July 16, 2013 and August 28, 2013, the Court held competency hearings in this case and again heard from expert witnesses as well as from defendant himself.  On September 23, 2013, the Court issued an order finding defendant competent to stand trial.  Doc. 130.

8. There is a presumption in favor of detention of defendant.  18 U.S.C. § 3142(e)(3).  The nature and circumstances of the offenses are very serious, and involve *hundreds* of child victims.  18 U.S.C. § 3142(g)(1).  The weight of the evidence against defendant is exceedingly strong and includes a detailed confession.  18 U.S.C. § 3142(g)(2).  Defendant's vile and extortionate behavior speaks volumes about his character, and his mental condition raises

grave concern about the danger that his release would present.   18 U.S.C. § 3142(g)(3)(A).

9.     Section 3142(g)(4) requires the Court to consider "the nature and seriousness of the danger to *any person* or the community that would be posed by the person's release" (italics added).   As opined by Dr. Bloomfield, a theme of suicidal ideation runs through defendant's evaluations for the past three years and has not abated.   When the Court originally released in April 2010, defendant's potential for suicide was not contemplated.   However, when the issue of suicide was presented to the Court in September 2010, the Court remanded defendant.   This remand was effectuated, in part, to protect the defendant from self-harm as well as the community from the danger that a suicidal defendant that has committed crimes of violence naturally presents.

10.    Defendant's suicidal ideations pose a "danger to any person," that is, to the defendant himself.   See 18 U.S.C. § 3142(g)(4).   Moreover, suicidal ideations of a defendant present the *ultimate* risk of nonappearance – if a defendant takes his own life, he will never again be able to appear in court.

11.    In his motion, defendant does not address the clear and present danger presented by his release, but relies instead on reasons of personal convenience and ease of case preparation and consultation.

12.    For three years, defendant engaged in crimes of violence right under the noses of his potential third party custodians, his parents.   Now, in light of his

4

established mental illness, his avoidant personality, his volitional refusal to communicate with others, and his ongoing suicidal ideations, the United States has serious doubts as to whether his parents can properly supervise defendant in a non-custodial setting.  Because of their admitted history of poor communication with defendant and despite their best intentions, it is highly unlikely that they would be able to exert the control over defendant required to ensure the safety of defendant and the community.

      13.    Since defendant was released on bond in April 2010, the Court and counsel for the parties have been made aware of the details of defendant's mental condition that were not known at the time of the detention hearing.  This information has "material bearing" whether reinstatement of defendant's bond is appropriate, and supports the continued detention of defendant.  See 18 U.S.C. § 3142(f)(2).

5

WHEREFORE, the United States respectfully requests that this Court deny defendant's motion to reinstate conditions of release.

        Respectfully submitted,

        A. LEE BENTLEY, III
        Acting United States Attorney

By    *s/ D. Rodney Brown*
        D. RODNEY BROWN
        Assistant United States Attorney
        Florida Bar No. 0906689
        300 N. Hogan Street, Suite 700
        Jacksonville, Florida 32202
        Telephone:    (904) 301-6300
        Facsimile:    (904) 301-6310
        E-mail:  rodney.brown@usdoj.gov

**U.S. v. LUCAS MICHAEL CHANSLER**     Case No. 3:10-cr-100-J-34TEM

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Alan E. Rosner, Esq.

*s/ D. Rodney Brown*
D. RODNEY BROWN
Assistant United States Attorney